# THE NATIONAL CAN COMPANY

*vs.*

# ROBERT GAIR COMPANY.

*Sale of Personalty—Option in Purchaser—Right to Revise Prices—Termination of Contract.*

Where a contract had been made for the sale of not less than eight nor more than fifteen carloads of cartons, distributed over certain listed sizes at specified prices, subject to a right in the seller to revise the prices every sixty days, *held* that the subsequent specification by the purchaser of the sizes and quantities of cartons, to be included in future shipments, did not affect the seller's right to revise the prices of the cartons yet to be shipped. p. 335

A contract for shipments from time to time at prices and in quantities to be named by the purchaser, subject to a revision of prices every sixty days, providing that "if agreement cannot be reached" the purchaser should "have the privilege of cancelling the balance of the contract," *held* that the purchaser's refusal to assent to increased prices, and to recognize the vendor's right to make the revision, operated as a cancellation of unfilled orders. p. 336

*Decided April 7th, 1921.*

Appeal from the Superior Court of Baltimore City (SOPER, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Charles Markell,* with whom was *Charles Lee Merriken* on the brief, for the appellant.

*J. Purdon Wright,* for the appellee.

URNER, J., delivered the opinion of the court.

The decision of this case depends upon the proper construction of a contract for the manufacture and delivery of corrugated cartons. The contract is embodied in a letter under date of December 28, 1917, written by the appellee and endorsed as correct by the appellant. It provided for the sale of not less than eight nor more than fifteen cars of the cartons "distributed over" certain listed and numbered sizes at specified prices. The remaining terms were thus stated in the letter:

"Prices are f. o. b. Baltimore, Md., 1 per cent. 10th of month following, and subject to a revision every 60 days upward or downward, according to the market conditions at that date. We will advise you 10 days in advance of any 60-day period what revision, if any, is to be made, and on receipt of your acceptance we will proceed on the basis of prices agreed upon. If agreement cannot be reached you are to have the privilege of cancelling the balance of contract. Prices refer to carlot shipments only. Shipments to be made in monthly installments between January 1st, 1918, and October 1st, 1918, you to give us 20 days' notice before shipment is required. 1500 wax can cartons and 2,000 No. 10 can cartons to be shipped via P. R. R. in about two weeks from date."

The initial shipment, amounting to a carload, for which the contract provided, was made on January 15th, 1918. Another carload was ordered on January 24th, and was shipped on February 16th. Additional orders for shipments aggregating four carloads, were given on February 7th and 22nd, and March 8th, and were filled in due course of delivery. On April 8th, the appellant wrote the appellee as follows:

"You will please enter the following specification account contract: 10,000 No. 2 cartons and 40,000 No. 3 cartons. Ship at once one car of the No. 2 size and follow in ten days with a carload of the No. 3 size. The next three months will be the heaviest of the year

with us, and we may want cartons on very short notice,
so please be in position to get our orders out promptly."

In thus specifying 50,000 cartons on account of the contract, the appellant exercised its right to take the maximum quantity stipulated. Five carloads had already been shipped, and the quantity mentioned in the letter of April 8th would make up the remaining ten carloads to which the sale was limited, the proof showing that about 5,000 cartons could be loaded on a car. In answer to that letter the appellee wrote, on April 11th:

"We have your letter of the 8th and we are entering your specifications for shipment of 10M No. 2 cases and 40M No. 3 cases. We understand that you desire us to ship promptly a car of No. 2 cases and follow in ten days with a car of No. 3 cases. We note that the next three months will be a heavy season for you; that you might call upon us for shipments on short notice. We shall be glad to give these requests our prompt attention. We must ask, however, that you give us your notice of your requirements as far in advance as possible. At the present time we have a considerable amount of orders which are for military supplies and which it is our patriotic duty to execute with priority over all others. In view of this we cannot emphasize too much the necessity of advance notice for shipment."

Under date of April 16th the appellant wrote the appellee stating:

"You can ship us a car of cartons every week, beginning with a car of the No. 2 size and ending with a car of the same size. All cars shipped between these two dates to be of the No. 3 size. We hope that these definite shipping instructions will enable you to place your work so that there will be no delay in getting any of them shipped. We cannot afford to run out of cartons during our busy season."

No answer appears to have been made to this letter, but in replying to a letter of the appellant dated April 25th in regard to the carload of No. 2 cartons ordered on April 11th and not yet received, the appellee referred to the fact that there had been delay in the transportation of the raw material required for the manufacture of the cartons, and said: "This will hinder us from maintaining the schedule which you prepared recently." Shipments subsequent to the five carload deliveries already mentioned were made on April 26th, May 6th, May 10th, June 6th and June 17th. Each of these shipments also consisted of a car of cartons, and thus altogether ten carloads were delivered.

On June 14th the appellee notified the appellant of an advance in the prices of the cartons listed in the contract, and the appellant wrote in reply:

"As specifications and shipping instructions for our whole contract were furnished you several months ago, we presume that we are not affected by the advance in prices."

This was followed by further correspondence on the same subject, the appellee insisting upon its right under the contract to revise the prices of the undelivered cartons, on account of the increased cost of labor and material, and the appellant contending that the prices could not be thus modified in view of the fact that it had given specifications as to the maximum quantity for which the contract provided. The appellee refused to make further shipments because the appellant would not assent to the proposed increase of prices, and the appellant declined to pay for the last two carloads received because of losses it claimed to have suffered in consequence of the discontinuance of the deliveries of cartons under the contract. The controversy resulted in this suit, in which the two opposing theories were appropriately asserted. A judgment, on the verdict of a jury, was recovered by the appellee for the unpaid contract price of the two carloads of cartons last delivered, with interest from the time stated in

the contract for the payment. The appeal brings before us a record presenting a single ruling to be reviewed. It was directed to the disposition of the prayers, which were all essentially concerned with the question whether the appellee was entitled to change the prices of the cartons as to future shipments, notwithstanding the appellant's specification of sizes for the entire remaining quantity mentioned in the contract, followed by the order for weekly deliveries. The effect of the action on the prayers was to answer that question in the affirmative.

The terms of the contract, as originally proposed and accepted, were indefinite in two particulars. The sizes of the cartons were yet to be designated, and it was left optional with the appellant whether to give orders beyond the minimum, or to the extent of the maximum, of the quantities specified. In both of these respects the agreement, as to its further performance, was made definite and certain by the accepted order of April 8th. It then undoubtedly became a complete and binding contract, whatever may have been its deficiencies prior to that time. *Kirwan* v. *Roberts,* 99 Md. 341; *Parks* v. *Griffith & Boyd Co.,* 123 Md. 242. As thus completed the contract, in regard to its unperformed purposes, provided for the sale of ten carloads of cartons, of specified sizes and at designated prices, subject to the right of price revision reserved in the contract, to which the order of April 8th distinctly referred. The specification of sizes and quantities, by which the contract was intended to be made fully operative, could not, upon any sound theory of construction, be held to have had the effect of nullifying the important right of price alteration as to which the parties had definitely agreed. It was provided that the shipments should be made in monthly installments between January 1st and October 1st, 1918, and that the prices should be subject to revision upward or downward every sixty days, according to market conditions. Notice was to be given the appellant ten days in advance of any sixty day period as to any proposed change of prices, and if it were assented to, the further deliveries were

to be made on that basis; otherwise the contract, so far as it then remained executory on the part of the appellee, could be rescinded. No provision was made as to the time for the specification of the sizes and quantities, but it was agreed that the appellant should give the appellee twenty days' notice when shipments were desired. It would have been entirely consistent with these provisions for the appellant to have specified immediately after the contract was entered into the sizes and quantities of the cartons required. No variation from its terms as to prices was occasioned by the letter of April 8th, which directed the entry of the "specification account contract" for the remaining quantity, advised the appellee that cartons might be needed on short notice, and requested that orders for shipments be filled promptly. That letter, in connection with the subsequent correspondence and course of dealing, may have resulted in a departure from the provision as to the time of notice of the appellant's carton requirements, and the proposal of weekly shipments in the letter of April 16th, if it had been agreed to or acted upon, which was not the case, would have greatly shortened the period mentioned in the contract for its full performance. But there was nothing in the correspondence or conduct of the parties that could properly be given the effect of depriving the appellee of the right secured by the contract to revise the prices of the cartons for any ensuing sixty day period, subject to the appellant's right to terminate the contract if the revision were not acceptable.

According to the evidence there was an advance of labor and material costs, which might well have justified the exercise of the option to increase the prices of the cartons for the sixty day period following the one in which the last shipments to the appellant were received. At that time, as the proof shows, the market price of No. 3 cartons, of which the remaining shipments were to be mainly composed, was about seventy-eight per cent. higher than the contract price of cartons of the same description. The proposed revision, however, represented an increase over the contract price of only

forty-nine per cent. It was in anticipation of changes in "market conditions" that the prices were agreed to be subject to revision at the vendor's instance, but with the right reserved to the vendee to reject any suggested change of that nature and thus abrogate the agreement as to the deliveries to which the new prices would have been applicable. No effort was made to increase the prices under the contract until two-thirds of the maximum quantity which the appellant could order had been supplied. The claim in suit, for the last two shipments, is based on the prices agreed upon originally, and there were no deliveries, undertaken to be made prior to the new price period, as to which the appellee was in default. The refusal of the appellant to assent to the increased prices, and to recognize the appellee's right to make the revision, operated as a cancellation of the unfilled orders according to the intent of the contract, as we construe the terms in which its purpose is expressed. There was consequently no breach of the agreement involved in the appellee's declination to make the shipments to which the rejected prices would have applied, and the theory of such a breach, with resulting damage to the appellant, is not available as a defense to this suit for the contract price of the two carloads of cartons last delivered, for which payment was not made or tendered.

The various instructions proposed at the trial need not be separately discussed. It is sufficient to say that the granted prayers were in harmony with the view we have stated, while those rejected were opposed to that conclusion.

*Judgment affirmed, with costs.*