The **CHAMPION BRICK COMPANY OF BALTIMORE COUNTY**, a body corporate, Plaintiff,

v.

**SIGNODE CORPORATION**, a body corporate, Defendant.

Civ. A. No. 16175.

United States District Court
D. Maryland.
Jan. 5, 1967.

See also D.C., 37 F.R.D. 2.

John F. King, Anderson, Coe & King, Baltimore, Md., Carl H. Lehmann, Jr., Towson, Md., for plaintiff.

William A. Fisher, Jr., Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## OPINION

MICHIE, District Judge.

This case requires the determination of the respective rights of the parties arising out of a contract providing for the sale and installation of a brick packaging machine known as the Signode Monorail. Suit was commenced on motion of the plaintiff brick company, the purchaser of the machine, filed in the Circuit Court of Baltimore County alleging negligence and breach of warranties on the part of defendant corporation. There being the requisite diversity of citizenship and amount in controversy, the defendant, a Delaware corporation with its principal place of business in Illinois, removed the action to this court. A motion for remand on the ground that defendant removed the action after having filed its answer in the state court

was overruled by this court in a memorandum opinion as the removal had been effected within the 20-day period prescribed by 28 U.S.C. § 1446.

Champion Brick Co., wishing to improve its facility for packaging the bricks which it produces, in 1962 contacted the defendant, Signode Corporation, a manufacturer of brick packaging equipment. Signode, after completing a comprehensive investigation of plaintiff's plant and packaging requirements, recommended the purchase of the Signode Monorail brick packaging machine. Champion contracted to purchase the recommended machine. The contract provided in pertinent part:

"EXAMINATION AND TESTING.

Within thirty days after we have completed testing of the completed installation of Signode equipment you are to accept the equipment or notify us in writing of anything you believe required to make the equipment acceptable. Should a disagreement arise as to whether the equipment and installation meets the requirements of this agreement and we are unable to settle our differences after earnest and mutual effort, then either party may elect to terminate this agreement by ten days written notice to the other, in which event, the equipment shall be removed, and moneys refunded, and no further liability by either shall exist hereunder.

\* \* \* \* \* \*

"WARRANTY.

We guarantee that the equipment furnished by us will be capable of performing the work for which it is designed providing your operating personnel abide by the operational and maintenance instructions given at the time of installation and make such minor adjustments as may be required while the equipment wears in. We further agree that for a period of one year after the date of installation, we will repair or replace, at our option, but not install, any part that proves to be defective in material or workmanship. However, we do not assume any liability for consequential damages or loss of anticipatory profits resulting from the use of this equipment or delay in its delivery."

Champion, in accordance with Signode's recommendation, and as required by the contract, then proceeded to make the substantial changes in its factory necessary to accommodate the new machine. The machine was brought to plaintiff's factory and assembled and set in operation by defendant's employees pursuant to the terms of the contract. Apparently it was in some way defective. Plaintiff claims that during the compression process of packaging cubes of bricks, a shifting occurred between uneven horizontal courses which resulted in the crushing of the corners and edges of the bricks. Signode spent considerable time adjusting the machine and claims it remedied the defect. Champion, however, asserts the contrary, claiming that the machine never worked properly. In short, a dispute as to the quality of the equipment arose between the parties which they were unable to settle. Signode then attempted to avail itself of the dispute and rescission clause in the contract, which is the second sentence in the "Examination and Testing" paragraph set out above, demanded the return of the machine and tendered back all moneys already paid by Champion. Champion refused to recognize defendant's right to terminate, and insisted on retaining the machine. In addition, Champion instituted this suit at law, claiming negligence in manufacture and design and breach of an implied warranty of fitness. It also claims a breach of several oral express warranties which allegedly induced the purchase of the machine. Plaintiff, Champion, contends that the contract may not deprive it of its remedies at law. Defendant, Signode, argues that the clauses set forth above effectively limit its liability, and has moved for summary judgment. I have concluded that the motion must be denied.

In support of its motion, defendant urges two theories. First it argues that the parties by mutual assent may provide for rescission of a contract under specified conditions and may limit their liabilites in the event of such rescission as they may desire. Alternatively, it notes that all the damages claimed by the plaintiff, e. g., loss of profits, loss of good will, and charges to remove defective brick are consequential as opposed to direct damages and as such are precluded by the warranty provision set forth above.

 Rule 56 of the Federal Rules of Civil Procedure allows summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The motion for summary judgment searches the record and, if there is any material factual issue in dispute, the motion may not be granted, as a party is entitled to a trial on that issue. The court may not restrict itself to a consideration of possible factual issues urged by the parties, but instead, it must assure itself that under any applicable theory of law there remains no unresolved material factual issue. Thus, the motion is an extremely important device for conservation of judicial time and costs of litigation where it is clear that no claim or defense to a claim exists as a matter of law. It is defendant's contention that the clauses in controversy render all factual issues irrelevant and entitle defendant to a judgment as a matter of law.[1] The law is clear that the defendant, the moving party, has the burden of demonstrating that there is no issue of fact. Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 190 F.2d 817, 824 (3d Cir. 1951).

 As to whether a sufficient issue of fact exists, federal law on the propriety of summary judgment will control. But as to matters of substance in this diversity case, including the interpretation and validity of the clause in question (which in this case may limit the factual issues), the law of Maryland where applicable must control. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

 Plaintiff asserts the existence of several factual issues. It first notes that there is a dispute between the parties concerning the suitability and quality of the packaging machine itself. However, it is precisely this dispute over the quality of the packaging machine which activates the clause under which defendant claims the right of rescission.

 Plaintiff also raises the issue that the installation of the machine was never completed. Its inference is that completion of installation is a prerequisite to the operation of the dispute and rescission clause of the examination and testing paragraph. I cannot agree. Where the language of the agreement is clear, devoid of inconsistencies and free from ambiguity, the court is to determine the intent of the parties from the plain language of the agreement. Hospital for Women v. United States Fidelity & Guaranty Company, 177 Md. 615, 11 A.2d 457, 128 A.L.R. 931 (1940); Norman v. Century Athletic Club, 193 Md. 584, 69 A.2d 466, 15 A.L.R.2d 777 (1949); Mayor and City Council of Baltimore v. Maryland Casualty Co., 171

---

1. It is not clear from defendant's motion for summary judgment whether or not it claims that the "examination and testing" and the "warranty" provisions also pertain to the dispute over the strapping material. I conclude that, since the contract purports to pertain only to the sale and installation of the packaging machine itself, the strapping is not included within those provisions. While the defendant has offered to accept a return of the unused strapping and the plaintiff, as evidenced in its Exhibit "B", has accepted this offer, this still leaves unresolved the factual issues presented by count III of plaintiff's original declaration which alleges damages resulting from the defective quality of that amount of strapping material actually used.

Md. 667, 190 A. 250 (1937). Where interpretation of language is necessary to determine the actual intent of the parties, words are to be given their ordinary meaning considering the context in which they are used. First National Bank v. Maryland Casualty Co., 142 Md. 454, 121 A. 379, 30 A.L.R. 618 (1923).

 From the plain meaning of the words used, the first sentence clearly relates to acceptance or rejection of the machine. Such a clause is necessary in a contract of this nature to assure a reasonable time within which acceptance must have taken place so that the seller will not be plagued by the buyer's later attempting to reject, claiming that he never has accepted. Note that this first sentence uses the term "completed installation". The second sentence, the one in which the dispute clause is found, contains no reference as to when the dispute must occur. Absent such a mention, a dispute occurring at any point would allow the right of rescission. The only thing which lends credence to Champion's assertion that the dispute and rescission clause may be activated only after the installation is complete is the fact that both are in the same paragraph, the dispute sentence following the acceptance sentence. Any force in this argument is negated by the fact that the dispute sentence speaks in terms of "installation", making no reference to "completed installation". Furthermore, common sense, which is buttressed by the phraseology used, would teach that the most likely dispute with regard to installation would be whether it was, in fact, proper, e. g., complete. I find plaintiff's asserted interpretation to be without merit and therefore conclude that the dispute and rescission clause may be activated at any time, provided that its own internal prerequisites are met. They are, first, a disagreement as to whether the equipment meets the requirements of the contract and, second, a good faith effort on the part of both to iron out the differences of opinion. Additionally, in order to effect the rescission and limitation of liability attempted to be afforded by the latter part of the clause, ten days written notice must have been given.

 Most certainly a dispute has arisen, and it has now given rise to this suit. Whether it is as to the quality of the equipment or its installation, or both, is immaterial, for a dispute as to either is sufficient. However, it is less clear whether each party has attempted in good faith to settle its differences. But when the defendant, Signode Corporation, is the party attempting to make use of the dispute and rescission clause, it is only necessary to find that it has acted in good faith. Champion's good faith, or lack of it, is immaterial. It is abundantly clear that Signode, through its extended attempts to make the machine and its installation acceptable to Champion, has met this good faith requirement. Accordingly, this is an issue of fact which is no longer of concern.

 The receipt of Signode's election to terminate is admitted by Champion. However, Champion contends that an effort by the defendant to terminate will not deprive Champion of its remedy at law. To support this view, Champion points to the permissive phraseology, "may" used in the clause. I cannot agree with the plaintiff in its contention that the word "may" is used to condition the exclusiveness of the remedy. As I read the clause, the word is used to allow *either party* the option to rescind. However, it is clear that once either party elects to rescind, the remainder of the clause is irrevocably activated. The last clause in the sentence clearly purports to allow Signode to limit its liability to a return of the purchase price by an exercise of the option to rescind the contract and call for a return of the machine. Champion contests the legality of both the right of rescission and the limitation of liability.

The issue, as I see it, therefore resolves itself to whether the parties to a contract can provide for a right of rescission upon the happening of certain conditions and, upon that rescission, limit the damages of each to a return of the machine and purchase price.

■ A court may not remake a contract entered into by competent parties so as to relieve one of them of an inequitable result.

> The law is well settled, that contracts are to be interpreted and enforced, according to the fair import of their terms, without reference to the hardships that may fall on the parties.

Duplex Envelope Co. v. Baltimore Post Co., 163 Md. 596, 608, 163 A. 688, 692 (1933). Furthermore, the Maryland Court of Appeals has said in Kahn v. Janowski, 191 Md. 279 at pp. 285–86, 60 A.2d 519, pp. 521–22 (1948):

> It is an accepted rule that where parties are competent to contract, neither party can be relieved from his promises merely because he did not use good business judgment or because the contract was not as profitable as expected, in the absence of fraud, undue influence, or mistake in making the agreement. [Citations omitted.] Generally the parties to a contract may provide that it may be rescinded at the option of either party, and may fix the rights and liabilities of each in the event of such rescission. * * * Where the right to terminate a contract is reserved in the instrument itself, in the absence of fraud, undue influence, or mistake, such reservation is valid and will be enforced, if not contrary to equity and good conscience.

Accord: National Can Co. v. Robert Gair Co., 138 Md. 330, 113 A. 858 (1921); Springer v. Korotki, 215 Md. 310, 137 A. 2d 655 (1958).

■ However, it must also be remembered that this present controversy arises upon a motion for summary judgment, and that upon such a motion, all of the facts and inferences therefrom are to be drawn in favor of the party opposing the motion. United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If, under any theory of law applicable to this case, it will be necessary to obtain additional facts before being able to render a complete decision, I feel the motion must be denied.

In Stevens v. Howard D. Johnson Co., 181 F.2d 390 (4th Cir. 1950), the district court had granted summary judgment for the defendant under an exculpatory clause in the contract similar to the one with which I am now faced. The Court of Appeals, speaking through Judge Parker, reversed in a very strong opinion. The Court stated, *inter alia*, at pp. 393–394:

> A number of questions arise, not only in connection with the breach of the contract, but also in connection with its proper interpretation and the damages recoverable for breach. These, however, should be decided in the light of the evidence which may be adduced upon a trial, not upon the affidavits presented on a motion to dismiss. It must not be forgotten that in actions at law, trial by jury of disputed questions of fact is guaranteed by the Constitution, and that even questions of law arising in a case involving questions of fact can be more satisfactorily decided when the facts are fully before the court than is possible upon pleadings and affidavits. The motion for summary judgment, authorized by rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., which in effect legalizes the "speaking" demurrer, has an important place in providing a prompt disposition of cases which have no possible merit and in preventing undue delays in the trial of actions to which there is no real defense; but it should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.

This is not to say that summary judgment is never proper where the defendant asserts a rescission clause as a defense. Compare Bushwick-Decatur Motors v. Ford Motor Co., 116 F.2d 675 (2d Cir. 1940) where summary judgment was granted. However, the ever-present question is whether a material factual matter remains unresolved and, follow-

ing the teaching of *Stevens*, the court must ask itself whether with the facts presently before it the legal issues presented may properly be decided.

I feel that additional facts are necessary to enable me to decide whether the law as applied to this case permits the unqualified limitation of liability that defendant asserts is given it by the "examination and testing" and "warranty" clauses.

I find a paucity of Maryland law as to the validity of a rescission and limitation of liability clause in a contract relating to the sale of goods. In cases involving service contracts and contracts for the sale of land, similar clauses have been approved. See, e. g., Geiger v. The Western Maryland R. R. Co., 41 Md. 4, 14 (1874); Baltimore & O. Railroad Co. v. Stewart, 79 Md. 487, 498, 29 A. 964, 965 (1894); Kahn v. Janowski, supra. Generally, in contracts for the sale of goods, a clause which limits the buyer's remedy to a return of the defective goods has been upheld. This rule appears to obtain even where the buyer asserts a breach of warranty. See Pettibone Wood Manufacturing Co. v. Pioneer Construction Co., 203 Va. 152, 122 S.E.2d 885 (1961). For a textual treatment of the principle, see 46 Am.Jur. pp. 844, 45; Sales § 721. The ability of the seller to limit the buyer to this one remedy, thereby excluding his remedies at law, appears to depend upon whether the parties to the contract clearly intended it to be the exclusive remedy. A clause which limits a buyer's remedies will be construed strictly against the seller. For an excellent discussion of these principles, see Anno: 84 A.L.R.2d 322 and cases cited.

However, it has been held that where the article sold under a contract which purports to limit the buyer's remedy is a machine, and the machine is not substantially as warranted, the buyer may repair to his remedies at law. F. C. Austin Co. v. J. H. Tillman Co., 104 Or. 541, 209 P. 131, 30 A.L.R. 293 (1922); Detwiler v. Downes, 119 Minn. 44, 137 N.W. 422, 50 L.R.A.,N.S., 753 (1912).

It is entirely possible that a fuller development of the facts may disclose that the parties intended that the clause limiting liability would operate only upon the condition that the machine furnished by the defendant was substantially as warranted. Common sense would indicate the likelihood of such a condition. The contract required that Champion prepare its plant to accommodate the new machine. The parties knew that Champion would have to expend substantial sums in so doing. While Signode was not in fact called upon to oversee the modifications, it had previously made a thorough investigation of plaintiff's facilities and would have been aware of the modifications necessary to meet the contract specifications. Should Signode, realizing the substantial expense Champion must necessarily undertake, then be allowed to deliver a machine which did not in fact substantially meet the warranties made and require Champion to shoulder the costs of modifications made in reliance on the warranties? I think not.

It may well develop that the parties never intended a condition to the rescission and limitation of liability clause, and it may well turn out that the machine is as warranted. However, these are questions of fact, crucial to a just determination of this controversy which should not be tried upon affidavits.

Expenditures for modifications of plant in reliance upon a seller's assurances as to the performance of the machine to be accommodated are compensable. Fairchild Stratos Corp. v. Siegler Corp., 225 F.Supp. 135, 148 (D.C.Md. 1963). As Champion may establish a right to such damages regardless of the efficacy of the clause in the contract which attempts to eliminate the defendant's liability for consequential damages, this case may not, at this point, be finally decided. Questions of law relating to issues posed by the warranty clause are deferred until such time as a final decision is rendered.

The motion for summary judgment is denied.