## DUPLEX ENVELOPE COMPANY, INC., *v.* BALTIMORE POST COMPANY.

[No. 61, October Term, 1932.]

598

*Decided January 12th, 1933.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Parke, JJ.

*Raymond S. Williams* and *John S. Stanley,* with whom were *Sam B. Witt, Jr.,* and *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellant.

*Albert A. Levin* and *Joseph Sherbow,* for the appellee.

Parke, J., delivered the opinion of the Court.

The plaintiff has long been established in the business of supplying religious bodies with a special form of envelopes for use in weekly church collections. In the development of this enterprise, the plaintiff adopted the device of printing on the backs of the envelopes exhortations, with the twofold object of stimulating a constant attendance at church services and a liberal and regular contribution for church purposes.

The content of this printed matter was different every Sunday; it was introduced by an appropriate text from the Bible, and its composition was by eminent divines or competent writers. In 1929 the plaintiff attempted a further development by selling this printed matter to selected newspapers for publication every week as a part of the section of the newspaper that was customarily allotted to the printing of matter relating to the various religious denominations of the place of publication. The plan was for the plaintiff to furnish the subscribing newspaper, during the year of its subscription, with fifty-two full page mats containing the weekly printed matter which would appear on the back of the collection envelopes, and the advertisements, which were to be printed in association with this printed matter. From this mat or mold as the matrix, the contents for publication were readily stereotyped for the weekly printing. In addition, the plaintiff furnished printed copies of this page, in order that the publishers of the newspapers would have it for exhibition in the solicitation by them of advertisements for appearance on the page to be published; and the plaintiff further supplied a list of the churches, with the names of their respective ministers, treasurers, and members, which used their collection envelopes, and other information and suggestions, which would all be informative and valuable to the newspapers, and which would give them access to a group of desirable prospective advertisers or readers, with a plausible reason for their approach and solicitation in the concerted effort by the representatives of the newspapers to obtain advertisements. The particular newspaper was to be paid for the advertisements printed in its journal by the advertisers whose names would be published as sponsors of the page. Thirteen of the weekly mats would be shipped by the plaintiff at a time so that the advertising for a quarter of the year would be available at one time.

The further details of this plan need not be set forth, as its nature, advantages, and appeal are sufficiently disclosed. In brief, the plan of campaign was furnished by the plaintiff, and its execution was the task of the subscribing newspaper.

The defendant is a corporation engaged in publishing a daily newspaper in Baltimore City, and is one of a number of associated newspapers known as the Scripps-Howard chain of newspapers. On August 6th, 1929, the plaintiff sent a lengthy communication to the defendant outlining the plan, and offered it for the consideration of the defendant as a means of selling advertising space. A form of a proposed contract was inclosed, along with specimens of what would be supplied by the plaintiff in fulfillment of the contract. In the form of contract which the plaintiff had sent were these terms:

"For this service the subscriber agrees to pay the Duplex Envelope Company ten per cent (10%) of subscriber's local noncontract page rate, due and payable in monthly instalments on the first day of each month commencing February 1, 1930.

"If any instalment remains delinquent for a period of thirty (30) days, the entire amount of the contract shall become immediately due and payable at the option of the Duplex Envelope Company.

"In consideration of contracting for the entire Scripps-Howard chain of newspapers, the Duplex Envelope Company agrees to allow twenty-five per cent (25%) discount off its gross billing to the subscriber, and in addition agrees to use advertising space in the paper below listed, at some time during the year, in the aggregate of one (1) full page, and agrees to accept billing for this page at the foreign rate as published in the rate book of the Standard Rate and Data Service. Payment for this advertising to be made by deducting the amount of the bill from the final amount due The Duplex Envelope Company under this agreement, for its service.

"The foregoing to equal, after charges and allowances and deductions have been made, the sum of ————."

"It is understood that all agreements are merged in this contract, and that it is not subject to cancellation."

The defendant considered the matter and sent to the plaintiff on August 13th, 1929, this telegram:

"Your contract calls for ten per cent. local noncontract page rate. We have special church rate, is it satisfactory for us to change this to local church contract page rate on your contract."

The next day the plaintiff replied by this telegram to the defendant:

"Satisfactory to substitute in contract ten per cent. of local church rate providing this will net us not less than twenty dollars a week, after deducting twenty-five per cent. and cost on full page advertising to be taken by us."

After this telegram was received by the defendant, a letter under date of August 14, 1929, was mailed to and received by the plaintiff. It is as follows:

"The Baltimore Daily Post

"Baltimore, Md., August 14, 1929.

"Mr. M. O. Jones, Presdt., Duplex Envelope Co., Inc., Richmond, Va.

"Dear Mr. Jones: I am enclosing in this letter signed contracts changed to read local Church Contract Page Rate in accordance with your telegram of the 14th.

"This will assure you of not less than $20 a week, after deducting 25%, if all the Scripps-Howard Newspapers subscribe. If not enough to cover cost of full page advertisement to be taken by you, we will work this out satisfactorily with you.

"I believe your proposition will go over very successfully in Baltimore, and you can rest assured we will go the limit to make it productive for all concerned.

"In your original presentation you mentioned that you would send us the list of Churches using these envelopes, also Pastors in charge and possibly the leading members of the Vestry.

"I might suggest, if you secure data on the way some of the papers are putting this over in their fields, it will be valuable to the rest of us so that we may profit by the experience of others.

"Very truly yours,

"The Baltimore Post,

"J. C. Flagg, Business Manager."

The duplicate contracts forwarded with this letter were signed and dated on August 14th, 1929, by the defendant, the Baltimore Post, with the change to "local church contract page rate" inserted, and were received in due course of mail on August 15th, 1929, when the plaintiff wrote the defendant an acknowledgment and forwarded the defendant one of the duplicate contracts which the plaintiff had executed after its receipt from the defendant.

The importance of this letter requires it to be reproduced:

"August 15th, 1929.

"Mr. J. C. Flagg, The Baltimore Post, Business Manager, Baltimore, Maryland.

"Dear Mr. Flagg: We have and thank you for your letter of August 14th, enclosing signed contract for the Duplex National Church Advertising Campaign, one copy of which we have executed and are returning herewith.

"This is with the understanding that the net cost to you is not less than $20.00 per week or $1,040.00 for the year after deduction of 25% discount special allowance for the Scripps-Howard papers and the cost of one full page advertisement to be used by us.

"For billing purposes, will you please advise what your local contract church rate is, which information you did not give us in your letter?

"We will send you today two copies each of all of the material to be used by your solicitors, and will have tomorrow a list of our customer churches in Baltimore, with the name of the pastor; and will also send you then a suggested plan for solicitation of the sponsors, which we believe will be of great value and make it easy to sell the page.

"We are delighted to have The Baltimore Post with us in this campaign, and we hope that the campaign will be productive of much good to the city of Baltimore generally.

"With all good wishes, we are

"Cordially yours,

"The Duplex Envelope Company.

"SGM:IM      S. G. Mason, Director of Service."

The plaintiff shipped to the defendant the mats in accordance with the contract. The plaintiff never received any notice that any of the mats or supplies which had been shipped by the plaintiff to the defendant were not accepted or had been returned by the defendant. In fact, the defendant wrote the plaintiff under date of December 29th, 1929.

"Received the mats shipped us November 13th in A1 shape. Am just wondering if you will forward me as soon as possible half-dozen sets of the original presentation on the Church Pages.

"Incidentally, if you have any additional ideas as result of putting this campaign over in other cities since original prospectus was sent out, will appreciate your forwarding me all information possible as we are having considerable difficulty here in Baltimore."

In compliance with the request, the plaintiff forwarded the desired articles and gave the requested information.

Again, in reply to the plaintiff's request, the defendant wrote to the representative of the plaintiff this letter, bearing date April 11th, 1930:

"Mr. E. L. Tignon, Duplex Envelope Co.,

Richmond, Va.

"Dear Mr. Tignon: Frankly, Mr. Tignon, I have been holding up the remittance on the Church Page due to our inability to get the page over in Baltimore. I understood all of our papers are having this same difficulty. I haven't given up the 'ghost,' I have had three different parties and I am still hoping we can get enough to enable us to start the feature.

"I know you are just as interested as we are in putting this feature over and I am wondering if you have any suggestions or can offer me any assistance.

"Very truly yours,

"The Baltimore Post,

"J. C. Flagg, Business Manager."

Then when the plaintiff, through C. W. Page Company, its advertising agent, forwarded to the defendant the one full page of advertising which, according to the stipulations between the parties, was to be published in the newspaper of the defendant for the benefit of the plaintiff as a part of the consideration or purchase price of the service sold by the plaintiff to the defendant, the latter declined to publish the advertisement and wrote this letter of refusal:

"July 31st, 1930.

"C. W. Page Co., Adv.,

Richmond, Va.

"Dear Mr. Page: I am returning herewith your order No. 11147 and copy for full page in the Baltimore post, on the Duplex Envelope Co. of Richmond, Va., which we are unable to accept due to the fact that the original provision involved in this proposition has been impossible of fulfilment.

"Very sincerely yours,

"The Baltimore Post,

"M. C. Roher, National Advertising Mgr."

The negotiations between the parties centered upon the question of the compensation to be paid by the defendant to the plaintiff. An early agreement had been reached that the original form of the contract should be altered so that the basis of calculation should be the defendant's local church contract page rate, but the plaintiff made this conditional upon a minimum compensation being named. The conclusion of the treaty between the parties on this term was reached when the plaintiff wrote its letter of August 15th, 1929, and accepted the written contract, which had been signed by the defendant, upon the understanding, expressed in writing, that the net cost to the defendant under the con-

tract is not less than twenty dollars per week or $1,040 for the year, after deduction of twenty-five per cent. special allowance for the Scripps-Howard papers and the cost of one full page advertisement to be used by the plaintiff, The legal effect of the plaintiff's signing of the written contract, which had been previously signed by the defendant, as modified in writing by the letter of August 15th, and sending the two back to the defendant, was a rejection of the next preceding offer of the defendant and a new offer on the part of the plaintiff which was communicated to the defendant by the receipt of the two paper writings. *Williston on Contracts,* sec. 77.

When this offer was made, the matter was in treaty, and, for a contract to result, an unqualified and unequivocal acceptance of the particular offer was requisite. The defendant did not formally accept, but an acceptance may be indicated by acts as well as by words. The defendant received and kept the paper writing, which had been signed by both parties, and the letter of August 15th, which contained the changes in the terms of the paper writing.

The testimony tends to prove that the plaintiff delivered the mats and supplies to the defendant, which accepted, used, and retained them, and that the defendant actively engaged in the prosecution of an organized effort to secure the advertisements pursuant to the plan contemplated by the contract, and held back the remittance to the plaintiff because of the inability of the defendant to carry the idea to a successful issue. From these and other pregnant facts there is no doubt that there was legally sufficient evidence for the jury to find that the defendant had accepted the offer made by the plaintiff in its letter of August 15th. *Equitable Endowment Assn. v. Fisher,* 71 Md. 430, 438, 18 A. 808; *Read Drug & Chemical Co. v. Nattans,* 130 Md. 465, 471, 100 A. 736. So the question of acceptance should have been submitted to the finding of a jury, and, if the jury had found an acceptance, the contract would be evidenced by the paper writing, which had been signed by both the plaintiff and defendant, and by the letter of the plaintiff to the defendant bearing date

August 15th, when read as a single document. *Noel Construction Co. v. Atlas Portland Cement Co.*, 103 Md. 209, 63 A. 384; *Amer. Law Inst., Restatement of Contracts*, secs. 235 (c), 228.

Furthermore, there was evidence from which the jury could have found that, although the plaintiff was able, ready, and willing to perform, and did perform, so far as was permitted, its promises, the defendant repudiated the contract. Consequently the plaintiff was entitled to recover at least nominal damages, and there was error in granting a prayer to take the case from the jury. Whether or not the plaintiff sustained and proved substantial damages depends upon the terms of the contract as interpreted by the court.

The record does not disclose that any other newspaper in the Scripps-Howard group had made a similar contract, nor that the defendant had agreed that any or all of these newspapers would contract, so no contention could be made that the condition had been fulfilled for the allowance of the specified discount of twenty-five per cent. within the meaning of the contract. Therefore, on the proof and under the terms of the contract, the plaintiff was merely entitled to the minimum amount as prescribed by the contract. The agreement of the parties clearly fixed this minimum at twenty dollars per week or $1,040 for the year and the cost of one full page advertisement in the newspaper of the plaintiff at the foreign rate, as published in the rate book of the Standard Rate and Data Service. These stipulations express the intention of the parties when the signed document and the letter of the plaintiff under date of August 15th are interpreted together and as a whole. *Amer. Law Inst., Restatement of Contracts,* sec. 235 (c). While it is true that there is a provision in the original draft of a proposed contract that stipulated for the payment for the single publication of a full page advertisement of the plaintiff in the paper of the defendant by deducting the amount of the bill from the final amount due the Duplex Envelope Company under the agreement for its services, yet the retention of this provision in the contract produces no uncertainty in meaning, because

this was and remains a subsidiary term to the next succeeding paragraph, whose paramount nature and effect arises from the fact that, notwithstanding to what residue all the antecedent amounts payable to the plaintiff might, after all charges and allowances and deductions have been made, be reduced, a minimum sum was to be inserted and to be paid to the plaintiff under any circumstance. The letter of August 15th was a completion of the blank space left in the paragraph last mentioned, and simply supplied and fixed the minimum sum payable by the defendant to the plaintiff no matter what the financial result might prove to be. *Amer. Law Inst., Restatement of Contracts,* sec. 236 (a) (c) (e). The office of a term providing a minimum compensation is to assure this amount of compensation in any event. From its nature it must prevail, since it has effect in but one contingency, whereupon it supersedes all else.

In consequence of what has been said, the testimony offered tended to show the making of a contract between the plaintiff and the defendant, a performance by the plaintiff of that contract, and a breach of it by the defendant that had resulted in substantial damages to the plaintiff; and the instruction given by the trial court taking the case from the jury was prejudicial error.

The plaintiff reserved two exceptions to the action of the court in permitting certain questions to be asked on the cross-examination of the president of the plaintiff corporation. There was error in each ruling. The first exception was taken to the inquiry if the witness would have wanted the full page advertisement of the plaintiff to have been published if the defendant had not owed money to the plaintiff and the plaintiff would have had to pay the cost of the advertisement. The question was immaterial and irrelevant. The plaintiff had sent the advertisement to the defendant for publication, and requested in writing that it be inserted pursuant to the terms of the contract. The interrogatory was objectionable because it was based upon an incorrect interpretation by the interrogator of the language of the contract and its answer involved an interpretation by the witness. Again, the defend-

ant had refused to publish the advertisement on the basis upon which it was presented, and the matter at issue was whether or not this was a breach of the contract, and the witness' opinion on a hypothesis at factual variance with the demand in writing upon which the defendant had acted introduced to the jury a misleading and confusing element.

The second exception was in permitting the witness to be asked if the witness knew whether or not the defendant had succeeded in its campaign made in accordance with the plan devised by the plaintiff. There was no issue to which the success or failure of the campaign was material. The defendant contracted with its eyes open, and there is nothing on the record to suggest that it did not receive all and precisely what the plaintiff promised. Whether the contract was unwise, whether its ultimate result was a complete failure in the realization of the expectations indulged by the defendant in making the contract, are beside the mark. In *Abbott v. Gatch,* 13 Md. 314, the court said: "The law is well settled, that contracts are to be interpreted and enforced, according to the fair import of their terms, without reference to the hardships that may fall on the parties." See *Wilson v. Hilliard,* 131 Md. 10, 15, 101 A. 603. Again in *Cowan v. Meyer,* 125 Md. 450, 466, 94 A. 18, the court stated: In the case of *Taylor v. Turley,* 33 Md. 500, Judge Stewart, in answer to the contention that subsequent events rendered the consideration for the defendant's promise so inadequate that it would be unjust to hold him bound by the terms of the contract, said: "Whether he made a good or bad bargain, or received a full equivalent for what he promised to pay, cannot affect the legal character of his obligation."

For the reasons assigned, the case should have been submitted to the jury for its finding on the issues of fact.

*Judgment reversed, with costs to the appellant, and new trial awarded.*