BOYER t/a Prince George's County Cab Company
*v.* TRANSIT CASUALTY COMPANY ET AL.

[No. 36, September Term, 1971.]

*Decided October 12, 1971.*

The cause was argued before HAMMOND, C. J., and
BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Victor L. Edwards* for appellant.

*Thomas A. Farrington,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

This appeal stems from an episode in the career of a Prince George's County taxicab entrepreneur (Boyer). In March 1968 he had been in business for ten years and at the time he owned 15 taxicabs. Liability insurance had been a constant irritant. Not only was it expensive, it was hard to keep. His policy had just been cancelled, for the second time. As a result the only insurance then available to him was that provided by the Maryland automobile insurance plan for assigned risks. Code (1968 Repl. Vol.), Art. 48A, § 243 (n) ; *Stumpf v. State Farm Mutual Automobile Insurance Company,* 252 Md. 696, 700 (1969). A friend took him to George A. Lutrell, a Bladensburg insurance broker, who was able to provide a policy under the assigned risk plan. As Boyer put it:

> "Well the purpose of us going over there was to try to find a cheaper insurance so we could stay in business, insurance was very high. And Mr. Lutrell had asked me a number of questions and among them was, did I own any property * * * in Charles County [Zone 14]—after I told him I did and he asked me if it had any buildings on it and I told him no and he said well you couldn't qualify for zone * * * [14] then until you rent a place where you can garage your vehicles."

The Maryland Automobile Insurance Plan (Effective 1 March 1960) describes Zone 12 as follows:

> "PRINCE GEORGE'S COUNTY SUBURBAN territory is comprised of all territory in Prince George's County within 5 miles of the limits of the District of Columbia, including all of the following places. . . .

| | |
|---|---|
| Berwyn Heights | Fairmount Heights |
| Bladensburg | Hyattsville |
| Brentwood | Landover Hills |
| Capitol Heights | Mount Rainier |
| College Park | Riverdale |
| Colmar Manor | Seat Pleasant |
| Cottage City | Suitland-Silver Hill" |

Zone 14 is described as:

"That portion of Prince George's County not included in Prince George's County Suburban * * *." (And including all of Charles County.)

The significant difference between Zone 12 and Zone 14 can best be expressed in dollars. For Boyer's taxicabs the one year premium for Zone 14 was slightly in excess of $3,500; the premium for Zone 12 was a few dollars short of $16,000.

Boyer said he returned a few days later and told Lutrell that he had rented a place at Pomfret, in Charles County, where the taxicabs would be "garaged." Accepting the information provided by Boyer, Lutrell prepared the application. Items 6, 6a and 9 on the application were completed, by the insertion of the italicized words, so as to read as follows:

"6. Place of principal garaging—each vehicle *Pomfret, Md.* 6a. Purpose of use—each vehicle *taxi.*"

"9. * * * indicate radius of operation *12 miles.*"

Immediately above Boyer's signature, in large print, are the words, "I have read, understand, and have true knowledge of the contents and responses to the above application." He also made oath that the statements made in the application were "true of his own knowledge." At trial he was asked why he stated his operation was within a 12 mile radius of Pomfret. He replied:

"Because it was, explained to me in order to get cheaper insurance, I would have to go to this other territory."

After conceding that his cabs, for years, had been operating outside of the Pomfret area and within five miles of the District of Columbia line Boyer was asked:

"You didn't think it was odd that you put down [a] Pomfret, Maryland address as your principal operation, if you were operating some place else?"

The ambiguity of his reply is enlightening:

"Well if the man writes the policy, I have nothing to do with it."

Pomfret, it will be observed, is very little more than a road junction about five miles northwest of La Plata, the county seat. Within a 12 mile radius of Pomfret lies most of Charles County and the southwesternmost tip of Prince George's County, a relatively undeveloped part of that county.

Lutrell admitted that he signed the statement in the application certifying he had read the plan, that he had carefully explained its provisions to Boyer, that he had inserted in the application all the required information given to him by Boyer and that he would be liable for the payment of the premium if Boyer defaulted. He said he explained to Boyer the difference between Zones 12 and 14. The only reason for doing so, he said, was that Zone 14 "joins" Zone 12. He said he did not recall the conversation related by Boyer.

About six months after the appellee (Transit), to which the risk had been assigned, had issued its policy to Boyer it discovered, quite by chance, that the vehicles were not being garaged at Pomfret and that most of Boyer's operation was being conducted in Zone 12. Thom-

as Rogers, Transit's Underwriting Manager, asked if he could account for the lapse of time (October to January) between discovery of the situation and the cancellation of the policy, testified:

"Yes sir, we can, as a Company attempting to operate in the utmost of good faith, rather than the moment we found out the policy had been misrated, grossly misrated and effecting cancellation, we wanted to give every opportunity to the insured, through this producer of record, of paying the additional premium that was then due us and still providing these people, with what we felt very strongly, was an insurance market, that they needed to have to protect the public. So we didn't just bail out from under it without making every attempt to collect what was due and owing us and it wasn't until January that we concluded that our attempts were going to be completely unsuccessful."

He testified further:

"* * * I believe we contacted the agent of record and he assured us, during the interim period that this money would be forthcoming and as a consequence is why we again delayed any concerted and forceful action until we were convinced that these promises were not going to be kept."

The cancellation notice, which was issued on 17 January 1969, bore an effective date of 21 February at 12:01 a.m. The amount due, as adjusted, was $10,681.

Transit sued Boyer and Lutrell. Lutrell filed a cross claim against Boyer. Boyer filed a cross claim against Lutrell. The case was tried in the Circuit Court for Calvert County, before Bowen, J., without a jury, on 4 December 1970. At the conclusion of Transit's case both Boyer and Lutrell moved for a directed verdict. Entirely

apart from the impropriety of the motions, Maryland Rule 535; *Lewis v. Germantown Insurance Company,* 251 Md. 535 (1968), we think Judge Bowen's denial of them was correct. At the conclusion of all of the evidence he gave Transit a judgment against Boyer for $10,681, and against Lutrell for $10,681. He also directed the entry of a judgment in favor of Lutrell against Boyer for the same amount. In his opinion, delivered orally from the bench, he said:

"Very well gentlemen, the court doesn't have any trouble with this case. I am bound to say I think so little of the testimony that I have almost made up my mind to have it typed up and referred to the State's Attorney for prosecution of the perjury involved. It is perfectly apparent to me that these people more or less, * * * [which] one or both, participated in a scheme which was designed to expose the insurance company to the risk of a fleet of vehicles operating in the Washington suburban area for premium payments based on rural Southern Maryland operations.

"I suppose it couldn't be any plainer evidence in this sort of chicanery than appears in the testimony in this case. The court is perfectly satisfied that the insurance company was required in this instance to apply the highest territorial rate in which the substantial part of the operation was carried on. The facts clearly disclose that a substantial part of the operation was carried on within the higher rated territory. The attempt to place the beginning of the radius of operation at a distance completely outside of that territory was nothing but a sham and a fraud on the company. Accordingly, we think the company is entitled to collect from the insured the additional premium."

* * *

"With respect to the liability of defendant

George A. Lutrell, we think that Section 11 C of the Maryland Automobile Insurance Plan, in this particular case afforded them ten thousand, six hundred and eighty-one perfectly good reasons for trying to find out why Pomfret was going to support fifteen taxicabs. I can't think of a more compelling reason than go for a ride in Pomfret and see where the site of this operation was. In any event the law is perfectly plain that he is responsible as a matter of law to the company for the net premium developed by the company on the basis of corrected information. * * *."

\* \* \*

"It is also perfectly apparent to the court that the liability of Mr. Lutrell is derivative and based upon the legal liability imposed by law, rather, and that the real beneficiary of the coverage in this case and the person who would ultimately foot the whole bill is the owner of the taxicab company."

Both Boyer and Lutrell appealed. Lutrell, however, dismissed his appeal after the transcript arrived in this Court. Boyer argues that Transit's judgment should be reversed because he was never notified that his premium had been increased. We see little, if any, merit in this argument which, it seems, is something of an afterthought. No mention of it was made at trial. Although he denied it Transit said Lutrell had been notified. Judge Bowen could have found that Lutrell had been told of the increase and it is clear, we think, that notice to Lutrell would have been notice to Boyer. *Durst v. Durst,* 225 Md. 175 (1961) ; *Boring v. Jungers,* 222 Md. 458 (1960).

Judge Bowen ordered the entry of separate judgments against Boyer and Lutrell but, since it is clear that Boyer and Lutrell are jointly and severally liable and that there can be but one recovery by Transit, we think

he meant to give a single judgment in favor of Transit against both Boyer and Lutrell. This inadvertence can be dealt with when the transcript is returned to the trial court. It seems hardly necessary to say that Lutrell can recover from Boyer no more than he may have to pay Transit.

Since Judge Bowen's findings of fact were not clearly erroneous nor has he misapplied the law we shall not disturb the judgments. Rule 886; *Styka v. Styka,* 257 Md. 464, 469 (1970).

> *Judgments affirmed. Costs to*
> *be paid by appellant Boyer.*