HOOTON ET UX. *v.* KENNETH B. MUMAW PLUMBING AND HEATING COMPANY, INC.

[No. 236, September Term, 1973.]

*Decided May 2, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*J. Michael Lehane* for appellants.

*Richard T. Rombro*, with whom was *Louis G. Omansky* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

After the heating system in their 100-year old Catonsville home failed early in 1970, appellants (the Hootons) entered

into a contract for a replacement with appellee (Mumaw), which spawned the dispute leading to this appeal. Previously, the Hooton dwelling, which had not been air-conditioned, was heated with a steam-heat system utilizing a single boiler located in the basement. Pursuant to the contract, Mumaw replaced this with two separate "forced air" systems, one located in the basement designed to heat and cool the first floor, and the other located on the third floor for the purpose of serving that level and the second floor. After those systems proved to be inadequate, the Hootons filed suit against Mumaw, alleging a breach of the contract and violations of the Baltimore County Building Code. At the conclusion of the Hootons' case, tried without a jury, the trial judge granted Mumaw's "motion for a directed verdict." From that decision, this appeal is taken.

The contract, in addition to specifying what was to be performed by Mumaw, provided:

\* \* \*

"4. Cold air return for 1st floor will be taken off main bottom step in hallway and also cold return put in one of the rear rooms. *This will give sufficient circulation for heating and cooling.*

\* \* \*

"2. Furnish and install American Standard heating cooling unit *adequate to heat and cool* 2nd and 3rd floors.

\* \* \*

". . . All work to be completed in workmanlike manner according to standard practices. . . ." (emphasis added).

\* \* \*

The basic contract price was $3400, all but $400 of which had been paid prior to the trial.

In their trial testimony, the Hootons vividly described the discomfort they had experienced after Mumaw completed its

work. For example, in mid-winter it was apparently not unusual for the temperature in some parts of their house to hover near the 50-degree mark — and even below that — while the thermostat was set at 80 degrees. As a consequence, they found it necessary to resort to space heaters, hot water bottles and heavy clothing, including Mrs. Hooton's fur coat. They had similar problems with the air-conditioning, as illustrated by the testimony that in hot weather, they were unable to force the temperature below 85 degrees.

To establish their claim that these conditions resulted from defective performance by Mumaw, the Hootons produced as a witness, Fred W. Von Behren (Von Behren), whose qualifications as an expert went unchallenged. He held a degree in mechanical engineering from Johns Hopkins University, and also had pursued graduate studies in electrical engineering. His firm was engaged in designing utility systems in the heating, ventilating, air-conditioning, plumbing and electrical fields. In addition to designing such systems, he studied existing operations for inadequacies or deficiencies.

As the result of three visits to the Hooton residence, Von Behren arrived at certain conclusions respecting the work done by Mumaw, and also designed a replacement system. He testified that, in his opinion, the systems installed by Mumaw "were inadequate for either cooling or heating [the Hooton] residence." By that, he meant that "the way they were installed and the way they were operating, it was not possible to achieve a reasonable level of comfort in either cold weather or in extremely warm weather." He attributed this inadequacy to the "materials used, the design concepts that went into the system, and also the methods of construction."

By way of further specification, Von Behren stated that the air distribution system was too undersized because some of the ducts did not meet nationally recognized standards. In addition, the components of the systems were improperly installed in certain areas; there were "a large number of offsets, bends and fittings, and this just builds up friction to

the point where the fans cannot push the air through all this friction." To further demonstrate the defects of the Mumaw systems, he testified that the air distribution limitations caused the heating systems to "go on and off and stay off for substantial portions of the time. . . . There is no way that sufficient heat could go to keep the place comfortable, yet, the automatic controls on the equipment keep it from operating because the equipment was so hot and the inadequacy of removal of flue gas had the safety controls cutting off the fan repeatedly . . . ."

Since he was of the opinion that "there is no way that this system [installed by Mumaw] can be put in a satisfactory operable condition," Von Behren concluded that, save for some minor parts, it should be replaced by an entirely new plant. To that end, he designed a plan calling for a hot water system circulating through peripheral baseboards, retaining the forced-air concept only for the air-conditioning. The low bid for installing the system recommended by Von Behren was $9,750.

In granting Mumaw's "motion for directed verdict," the trial judge ruled from the bench that the Hootons' failure to prove how much damages they had sustained, if any, was fatal to their case. In the course of announcing his decision, he made the following observation concerning Von Behren's opinion that the systems installed by Mumaw should be replaced:

> ". . . What he wants to do is tear everything up and put in a new system. I am impressed with the gentleman's qualifications, but *I am not too impressed with the conclusion he comes to* in this case. He says that the new system would cost nine thousand dollars or more, and, certainly, *that doesn't make sense* to This Court. . . ." (emphasis added).

In their appeal to this Court, the Hootons present two issues for our consideration. First, they contend that the lower court erred by not allowing Von Behren to testify that Mumaw violated certain provisions of the Baltimore County

Building Code. Secondly, and of greater consequence, they contend that the court erred in dismissing their case without requiring Mumaw to go forward with its defense. They maintain that the court failed to apply the correct test for dismissing a case at the conclusion of the plaintiff's evidence.

(1)

The Hootons sought to elicit testimony from Von Behren that Mumaw had violated the Baltimore County Building Code in several respects. After a brief colloquy with counsel, the court sustained an objection to the admission of this testimony on the basis that the witness had failed to actually bring the code itself to court, and because he was apparently unable to furnish the specific code sections in question.

In attacking this ruling, the Hootons contend that it was unnecessary for them to offer the building code into evidence, since Maryland Code (1957, 1971 Repl. Vol.) Art. 35, § 66A, which governed at the time of this trial, provided that:

> "The public laws, ordinances, regulations, and resolutions approved and enacted by the respective counties . . . *shall be judicially noticed* or shall be read in evidence . . . ." (emphasis added)[1]

Thus, they say, it was unnecessary to present formal proof of the building code or otherwise offer it in evidence. *See Plitko v. State,* 11 Md. App. 35, 40, 272 A. 2d 669 (1971), *cert. denied,* 261 Md. 728 (1971). Mumaw does not seriously resist this argument, but urges instead that any error in this regard was harmless, since Von Behren was not shown to possess any expert qualifications concerning the building code. In view of the witness' manifest qualifications as an expert in mechanical engineering, we do not agree that it was necessary for him to demonstrate that he was an expert

---

1. Now codified as Code (1974), § 10-203 of the Courts and Judicial Proceedings Article.

on the Baltimore County Building Code itself, whatever that might have required, in order to testify that it had been violated. We cannot reach this issue here, however, since the Hootons made no proffer of what violations they proposed to establish.

Since the case must be retried in any event, we note that despite the absence of any reference to the building code in the contract, compliance with a building code may be an implied condition of a contract, *Denice v. Spotswood I. Quinby, Inc.*, 248 Md. 428, 433-38, 237 A. 2d 4 (1968).

### (2)

As we have already indicated, the trial judge purported to grant Mumaw's "motion for a directed verdict" at the conclusion of the Hootons' evidence, when, instead, what he should have entertained was a motion to dismiss under Maryland Rule 535. We have pointed out on a number of occasions that in actions tried by the court without a jury, a motion for a directed verdict is not a proper motion, *Boyer v. Transit Casualty Co.*, 263 Md. 36, 40-41, 282 A. 2d 3 (1971); *Isen v. Phoenix Assurance Co.*, 259 Md. 564, 569, 270 A. 2d 476 (1970); *Southwestern Mines v. P. & J. Coal*, 244 Md. 180, 184, 223 A. 2d 162 (1966), and that a motion under Rule 535 has been designed especially for non-jury situations, *Isen v. Phoenix Assurance Co.*, *supra; Smith v. State Roads Comm'n*, 240 Md. 525, 539, 214 A. 2d 792 (1965). Notwithstanding the incorrectness of the procedure followed below, we shall treat this appeal as one taken from the granting of a motion to dismiss under Rule 535, *Boyer v. Transit Casualty Co.*, *supra; Isen v. Phoenix Assurance Co.*, *supra; Kelley Constr. Co. v. Sanitary Comm'n*, 247 Md. 241, 244, n. 1, 230 A. 2d 672 (1967).

The proper standard for granting such motions is equally well-settled. As Judge McWilliams aptly said for this Court in *Isen v. Phoenix Assurance Co.*, *supra:*

> "We have made it clear, we believe, that in cases where a motion to dismiss under Rule 535 has properly been filed, the trial judge should approach the testing of the legal sufficiency of the evidence

produced by the plaintiff just as he would approach an appraisal of the evidence in a jury case upon the filing of a motion for a directed verdict. *Smith v. State Roads Commission, supra,* and *Allen v. Steinberg,* 244 Md. 119, 122-23 (1966). He is required, therefore, in non-jury cases, to consider the evidence and all logical and reasonable inferences deducible therefrom in a light most favorable to the plaintiff. *Trusty v. Wooden,* 251 Md. 294, 297 (1968); *Finneran v. Wood,* 249 Md. 643 (1968); *Raff v. Acme Markets, Inc.,* 247 Md. 591 (1967). . . ." 259 Md. at 571.

Other cases enunciating these latter principles are *Snider Bros., Inc. v. Heft,* 271 Md. 409, 317 A. 2d 848 (1974), *Davis Adv. Serv. v. Exec. Staffing,* 264 Md. 644, 645, 288 A. 2d 148 (1972), *Antietam-Sharpsburg v. Marsh,* 252 Md. 265, 268, 249 A. 2d 721 (1969), and *Price v. Levin,* 248 Md. 158, 160, 235 A. 2d 547 (1967).

Wholly apart from the substantive testimony itself, it is apparent that the trial court did not observe the proper test to be applied in this instance. In stating that it was "not too impressed with the conclusion [Von Behren] comes to in this case," and in rejecting it because it did not "make sense," the court was not merely ruling upon the legal sufficiency of the Hooton evidence, as required, but was weighing the testimony as though it was then acting in its role as the trier of fact.

There is another instance in which error is apparent from the trial judge's ruling itself. Having implicitly concluded that Mumaw breached the contract, the court proceeded on the incorrect premise that a failure to prove damages compelled a dismissal of the case. It is firmly established by our prior decisions that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages. *Asibem Assoc., Ltd. v. Rill,* 264 Md. 272, 276, 286 A. 2d 160 (1972); *Rotwein v. Bogart,* 227 Md. 434, 438, 177 A. 2d 258 (1962); *Gilbert Const. Co. v. Gross,* 212 Md. 402, 412, 129 A. 2d 518 (1956); *Envelope Co. v. Balto. Post Co.,* 163 Md. 596, 606, 163 A. 688 (1933); *see*

*Mallis v. Faraclas,* 235 Md. 109, 116, 200 A. 2d 676 (1964). Therefore, the application of this rule alone should have resulted in a denial of the motion to dismiss.

Our conclusion that this case must be remanded for a new trial compels us to go further, however, to consider whether the Hootons' evidence was otherwise sufficient to survive the motion to dismiss. We think it was.

As we have already intimated in our earlier summary of the facts, had the trial court considered "the evidence and all logical and reasonable inferences deducible therefrom in a light most favorable" to the Hootons, it could have found that Mumaw promised a heating and cooling system "adequate" to provide a reasonable level of comfort, but that it completely failed to do so. It also could have found that nothing less than a new system would achieve the standard promised the Hootons. We see no merit in Mumaw's argument that the Hootons agreed to the design which ultimately proved to be ineffective. The court could have found that, in so doing, the Hootons were nevertheless relying upon Mumaw's expertise and the express warranty contained in the contract.

We turn, then, to the correct measure of damages to be applied in such cases. Both sides urge upon us *Correlli v. National,* 240 Md. 627, 214 A. 2d 919 (1965), as supporting their respective positions. What we there said regarding the measure of damages in breach of express warranty cases does seem particularly apposite here:

> ". . . The measure of damages in a case such as this, where the appellee seeks to enforce an express warranty, is that amount of money which will render that which is guaranteed to be as warranted. From the testimony that some eighteen attempts have been made at repair by the appellant the trial court could have properly found that future attempts by appellant, at least, would be similarly ineffective and would not accomplish the purpose of the guarantee. Thus, it was proper to award money damages which would allow another firm to correct the roof's leakage instead of making the appellee

suffer further inadequate repairs to its roof by Correlli. However, we do not feel that the appellee has adequately proven what that dollar figure would be, and as a consequence there was nothing on which the trial court could have properly based his award of damages." 240 Md. at 632-33.

The measure of damages which we apply in Maryland in such cases is substantially in accord with the weight of authority, 13 Am. Jur. 2d, *Building, Etc., Contracts* § 79 (1964); 25 C.J.S. *Damages* § 76 (1966); 5 Corbin, *Contracts* § 1089 (1964).

We held in *Correlli* that the plaintiff there failed "to show what type of new roof" it proposed to substitute for the defective one, and, in contradistinction to the case at bar, we also said that "there was no evidence to show that a new roof was needed as opposed to additional repairs to the defective roof." 240 Md. at 633. Here, as we have stressed, there was evidence from which the trial judge could have found that a new heating and cooling system was indeed necessary.

It does appear, however, that the Hootons' evidence suffered in one respect from an infirmity similar to that afflicting the plaintiff in *Correlli*. The Hootons are only entitled to a system which will fulfill the warranty made by Mumaw, and not one which may be designed to exceed that standard, *Correlli v. National, supra,* 240 Md. at 633; nor one which results in unreasonable economic waste, 5 Corbin, *Contracts,* §§ 1089, 1090 (1964).

In sum, the trial court erred in dismissing the case at the conclusion of the plaintiffs' evidence, since sufficient testimony was presented to require the defendant below to go forward. In light of the principles recited herein, it is therefore necessary that there be a new trial, and we remand the case for that purpose.

*Judgment reversed; remanded for a new trial; appellee to pay costs.*