## CORRELLI ROOFING CO., INC. *v.* NATIONAL INSTRUMENT CO., INC.

[No. 30, September Term, 1965.]

628

*Decided December 14, 1965.*
*Motion for rehearing filed January 11, 1966, denied January 18, 1966.*

The cause was argued before PRESCOTT, C. J., and HAM-
MOND, MARBURY, BARNES and McWILLIAMS, JJ.

*Hyman K. Cohen,* with whom was *Jay Fred Cohen* on the brief, for appellant.

*Alexander Stark* and *Victor H. Savadow,* for appellee.

MARBURY, J., delivered the opinion of the Court.

National Instrument Company, Inc., plaintiff-appellee, was the owner of a thirteen year old building when, during the year 1961, it contracted to have an addition constructed to the existing building. The general contractor was Mr. Charles Di-Pangrazio who sub-contracted the installation of the roof to Correlli Roofing Company, Inc., defendant-appellant. The approximate cost of the entire new masonry building was $24,000, including the price of the flat roof, which was $1,300. The appellant, when the new roof was completed, delivered to the appellee a written guarantee, dated July 10, 1961, which guaranteed the roof "to be Leakproof and to wear 15 years under natural wearing conditions." It further stated that the appellant assumed no liability for damage to buildings or contents thereof.

Suit was instituted on December 27, 1963, and the case was tried before Judge Sodaro without a jury, on November 18, 1964. The plaintiff's theory of recovery was that there was a breach of an express warranty in that there was considerable leakage through the guaranteed roof of the new addition which required the replacement of the entire roof. This leakage, in addition, was also the basis for a claim for compensation for alleged damages to interior contents.

At the conclusion of the trial the case was held sub curia, but on the same day Judge Sodaro wrote a letter to the defendant's attorney, with a copy to the plaintiff's attorney, advising them that he had concluded to render a judgment in

favor of the plaintiff in the amount of $2,466, the exact amount testified by Mr. Rosen, president of the appellee, to be the cost of a new roof which was being put on the addition at the time of trial by the Edward G. Fick Roofing Company, the lowest of three bidders on the job. The judge, however, gave no basis for his award of damages and neither of the parties requested him to do so, as they might have done pursuant to Maryland Rules 18 c and 564 b 2. From the judgment subsequently entered in accordance with the letter of Judge Sodaro, the appellant has entered this appeal, which raises three questions: (1) did the appellee prove that the roof leaked, (2) if the appellee did in fact show that the roof leaked, was the appellant liable therefor under the guarantee, and (3) did the appellee prove damages sufficient to justify the award by the trial judge.

According to the testimony of Mr. Rosen, the roof leaked and had done so from the first time it rained after its completion. He also testified that Correlli sent its men out in response to his complaints approximately eighteen times, but they were uniformly unsuccessful in abating the leakage and, in fact, the leakage appeared to him to get progressively worse, despite the repairs. Rosen admitted that the appellant never refused to continue to make repairs on the roof but that they did refuse to construct a new roof, which he finally had requested. Six photographs were introduced into evidence by the appellee to show that the roof leaked, and one photograph showed a droplet of water actually striking a puddle upon the floor. The plant manager of the appellee company, who worked in the building, also testified that the roof leaked. Mr. Rosen was allowed to testify, over appellant's objection, to damages to the interior contents of the building.

The plaintiff below also called Mr. DiPangrazio, who had been a building contractor for some twenty-nine years, but, according to his own testimony was not a roofing expert. DiPangrazio testified that he had received a complaint that the roof leaked about "a month or so" after the building was completed and that he had many subsequent complaints from National Instrument Company about leakage, and that he had seen leakage especially where the flashing had been torn loose. Mr.

DiPangrazio explained that the flashing had to be replaced because it was warped and twisted due to the heat of the sun and because the roofers had not used the best type of flashing. He did not testify specifically that he thought a new roof was required but he did recall a conversation with Herman Correlli in which he (DiPangrazio) questioned the efficacy of appellant's continued patching. He testified, however, that if a new roof were to be built it was necessary to scrape down to the gypsum pouring deck, as was done by the Fick Company, instead of merely building a new roof atop the old, and that this required about two and one-half times more work than the original construction done by appellant.

The Roofing Company called John F. Detorie, who had been in the roofing business for some twenty-nine years and who had made a personal inspection of the allegedly defective roof. He testified that the apparent source of the entry of the water was through the flashing which was torn and cracked, and that the only thing which would cause this was the settlement of the building. He further testified that normally the builder, and not the roofer, was responsible for damage done by settlement. He admitted, however, that he had not inspected this building to see if it had in fact settled, and opined that a completely new roof was not necessary because the only defect which he saw in the roof was the torn flashing, which could be repaired. Moreover, he testified that if a new roof were to be constructed it would not be necessary to scrape down to the pouring deck, as Mr. DiPangrazio had testified and as the Fick Company was doing at the time of the trial.

The appellant did not call as a witness Herman Correlli, the person who supervised construction of the roof, but instead called Henry Correlli, its president, who had supervised some of the repair work. He testified that he had repaired the flashing which was twisted due to settlement of the building. Since the flashing had been repaired, he stated that it was "a possibility" that the present leakage was due to entrance of water through the wall which separated the old building from the new and that the water then followed a structural beam to the new part of the building where it fell through to the floor, instead of through the roof built by Correlli. However, Mr. Di-

Pangrazio, who had constructed the addition, testified that it was his opinion that the water could not have so traveled in this particular building.

In regard to the appellant's first contention, the testimony of Mr. Rosen, of the plant manager, and of Mr. DiPangrazio, all to the effect that the roof leaked, toegther with the photographs of the water in the building, could properly have led the trial judge to believe that the roof did leak. The only testimony that the water did not, in fact, come through the guaranteed leak-proof roof, was the speculation by Henry Correlli that the water could have crossed by way of the structural beam beneath the roof of the addition. Balancing the mere speculation as to what might be an alternative cause against the testimony of the general contractor negating the possibility of that alternative, we can not say that the trial judge was clearly in error.

Appellant's next contention appears to be, although it is not specifically so stated, that the guarantee that the roof would be leakproof should not be enforced against it due to the fact that the leakage, if any, was caused by the settlement of the building, which in turn caused the flashing placed on the roof by it to crack and tear, and that the general contractor, not the roofer, is responsible for damages caused by the settlement. Assuming that the roofer is not responsible, under the written guarantee, for damages due to settlement, we feel that there was sufficient evidence from which the trial judge could have found that the leakage was caused by defects within the roof rather than the building's supposed settlement and that the appellant was thereby liable.

Lastly, the appellant's argument is that the appellee did not adequately prove damages which would justify the trial court's award. We agree. The measure of damages in a case such as this, where the appellee seeks to enforce an express warranty, is that amount of money which will render that which is guaranteed to be as warranted. From the testimony that some eighteen attempts had been made at repair by the appellant the trial court could have properly found that future attempts by appellant, at least, would be similarly ineffective and would not accomplish the purpose of the guarantee. Thus, it was proper to award money damages which would allow another firm to

correct the roof's leakage instead of making the appellee suffer further inadequate repairs to its roof by Correlli. However, we do not feel that the appellee has adequately proven what that dollar figure would be, and as a consequence there was nothing on which the trial court could have properly based his award of damages.

The trial court improperly allowed some testimony, over objection, as to what were the appellee's damages to contents of the building. This was improper because the guarantee upon which the suit was instituted specifically precluded liability on the part of the roofer for such damages. Since the dollar figure of damages ascertained by the trial court is the same as the cost of a new roof then being placed on the building, it seems likely that the trial court did not include in his award of damages compensation for the harm done to interior contents. But since neither of the parties requested the trial judge to reduce to writing a memorandum stating the grounds for his decision and the method of determining the damages which he awarded, pursuant to the Rules, we have no means of knowing what the trial judge included in his damage figure.

Even if we assume that Judge Sodaro used as his measure of damages Fick's price for the new roof, there was no legally competent evidence to justify his so doing. First, there was no evidence to show what type of new roof was being put on by Fick, what type of warranty it carried, or how it was in any way comparable to the original roof. There was testimony that another bidder on the roof, Wallace and Gale Company, would guarantee its roof for twenty years, and for all that appears in the record the Fick roof could be similarly guaranteed, which would of course give appellee more than the initial warranty required. Secondly, even if we assume that the Fick roof was of the same type and carries the same guarantee, there was no evidence to show that a new roof was needed as opposed to additional repairs to the defective roof. The president of the appellee testified that he desired a new roof and had contracted for its construction, but there was no testimony, expert or otherwise, to show that it was necessary in order for the warranty to be fulfilled, but on the contrary there was the testimony of Mr. Detorie, who said emphatically that a completely new roof was not needed.

We conclude that the appellee did prove that the appellant had breached its express warranty and that under this particular guarantee it was entitled to the amount of money needed to make the roof as warranted, *i.e.,* leakproof for a period of fifteen years under normal wearing conditions; but since the appellee did not adequately prove what those damages were, the case should be remanded pursuant to Rule 871 a so that additional evidence may be presented to determine the amount of damages.

Appellee should then be allowed, if it can, to introduce evidence to show that a new roof was needed and what would be the total cost of installing a new roof similar to the one Correlli contracted to install and carrying a similar fifteen year warranty. If the appellee is unable to prove that a new roof was needed to effectuate the guarantee, the appellee may then produce evidence as to what would have been the cost of making repairs on the first roof so that the guarantee could be fulfilled.

> *Judgment affirmed as to liability but case remanded without affirmance or reversal for a new trial as to damages. Costs on this appeal to be paid by appellee.*