21ST CENTURY
PROPERTIES COMPANY

v.

CARPENTER INSULATION AND
COATINGS CO., et al.

LUSKIN'S, INC.

v.

CARPENTER INSULATION AND
COATINGS CO., et al.

PULASKI REALTY ASSOCIATION

v.

CARPENTER INSULATION AND
COATINGS CO., et al.

JACK LUSKIN'S, t/a Burningwood
Realty Co., et al.

v.

CARPENTER INSULATION AND
COATINGS CO., et al.

Civ. Nos. JFM–87–2208 to JFM–87–2211.

United States District Court,
D. Maryland.

Sept. 2, 1988.

Joseph C. Kovars, Blum, Yumkas, Mailman, Gutman and Denick, P.A., Baltimore, Md., for plaintiff.

Donald C. Allen, Allen, Thieblot & Alexander, Baltimore, Md. and David R. Thompson, Earnest & Cowdrey, P.A., Easton, Md., for defendants.

## OPINION

MOTZ, District Judge.

Plaintiffs in these consolidated actions are related companies which contracted with defendant Tri–State Roofing Co. to install roofing manufactured by defendant Carpenter Insulation and Coating Co. at four different locations. Problems developed with the roofing at each of the sites, and, after repair attempts proved unsuccessful, plaintiffs brought the instant lawsuits. Now pending before the Court are summary judgment motions filed by defendants.

## BACKGROUND [1]

Plaintiffs own and operate retail appliance stores trading under the name of Luskin's. In June 1984, Tri–State's general manager, Jack Lamon, contacted a representative of plaintiffs and proposed installation of a polyurethane foam ("PUF") roofing system at plaintiffs' Glen Burnie store. Lamon provided plaintiffs with a work proposal and a promotional brochure describing the PUF system which was published by Carpenter, the manufacturer of the system.

On July 11, 1984, plaintiffs issued a purchase order for the roofing at the Glen Burnie store. Carpenter supplied the materials, and the work was completed shortly thereafter. In accordance with its policy, Carpenter inspected the completed roof and, on October 9, 1984, issued, together with Tri–State, a joint limited warranty.

On July 16, 1984, Tri–State submitted a proposal to install a similar roof on plaintiffs' Towson building. The parties apparently entered into an oral agreement, and the work was completed in late November 1984. Once again, pursuant to its policy, Carpenter inspected the roof. Finding that the workmanship did not satisfy its standards, however, Carpenter refused to issue a limited warranty, demanding that certain repairs first be done. Despite plaintiffs' efforts to obtain a warranty, no warranty was ever issued.

---

1. Because defendants are the parties moving for summary judgment, all of the facts recited in this Opinion are stated as favorably to plaintiffs as the summary judgment permits.

On August 17, 1984, plaintiffs issued a purchase order to install a similar roof on plaintiffs' Liberty Road building. This work was completed in October of 1984, and, after inspecting the work, Carpenter issued, along with Tri–State, a joint limited warranty.

The roofing at plaintiffs' Golden Ring store was done under an oral agreement, entered into in the fall of 1984. Plaintiffs' president testified that the terms of this agreement, and, in fact, of all four agreements, were the same. Tri–State completed this roof in December of 1984. After inspecting the job, however, Carpenter found the work to be substandard and refused to issue a warranty. Again, plaintiffs subsequently sought, without success, to obtain such a warranty.

Almost immediately after Tri–State's work was completed, plaintiffs began experiencing roof leaks at all four stores. Plaintiffs repeatedly requested that Carpenter and Tri–State repair the roofs, but to no avail.

## DISCUSSION

Plaintiffs assert claims against Carpenter for negligent misrepresentation and (in connection with the Glen Burnie and Liberty Road stores) breach of express warranty. They assert the same claims, plus claims for breach of contract, breach of implied warranty of fitness and negligence, against Tri–State. Carpenter has moved for summary judgment as to all of the claims against it. Tri–State seeks summary judgment as to the claims for breach of implied warranty of fitness, negligence and negligent misrepresentation.

*Claims For Negligence and Breach of Implied Warranty of Fitness*

Plaintiffs' negligence claim is based upon the allegation that Tri–State improperly recommended PUF roofing for plaintiffs' stores. They contend that this claim exists independently of any claim based upon their contracts with Tri–State because the contracts covered only the actual *installation* of the roofing. Alternatively, plaintiffs assert a claim that Tri–State breached an implied warranty that the roofing would be fit for the purpose for which it was intended. It is convenient to consider these claims together because they bring into focus (a) the interrelationship between tort and contract law, and (b) the effect of an exclusive remedy provision and an implied warranty disclaimer clause contained in the express warranty issued by Tri–State and Carpenter in connection with the Glen Burnie and Liberty Road stores.

The starting point for analysis is the principle that, as a general matter, the relationship of parties in privity with one another should be defined by contract rather than tort law. This principle is, of course, subject to numerous exceptions. For example, all contracts have traditionally been voidable on the ground of fraud—a tort concept. Similarly, the Maryland Court of Appeals has increasingly subjected the pre-contract relationship between parties to the tort law of negligent misrepresentation. *See, e.g., Weisman v. Connors*, 312 Md. 428, 540 A.2d 783 (1988); *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534 (1982). The distinction between tort and contract law has likewise been blurred by the legions of cases and statutory enactments which permit plaintiffs to recover damages for faulty workmanship, defective design or the manufacture of unreasonably dangerous products from defendants with whom they were not in privity. These cases usually have involved personal injury or other physical harm suffered by individual plaintiffs. Recently, however, the Maryland Court of Appeals has held that where no such harm has yet been suffered but where there is an actual risk of its occurrence, a condominium association may recover in tort for the economic loss which it has suffered in repairing or replacing the dangerous condition. *Council of Co–Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 517 A.2d 336 (1986); *cf. Jacques v. First National Bank*, 307 Md. 527, 515 A.2d 756 (1986) (permitting tort recovery by bank customer of economic loss caused by improper mortgage processing).

These cases notwithstanding, the exceptions are still exceptions and the fundamental distinction between tort and contract law remains intact. While courts have properly prevented the growth of the law from being stunted through mechanical application of conventional rules, they have not profligately permitted indiscriminate recognition of tort causes of action in every contract case. *See generally East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); *Flow Industries, Inc. v. Fields Construction Co.*, 683 F.Supp. 527, 530 (D.Md.1988). Tort rules are evolved from considerations of overriding public policy, and it is only in response to a clearly articulated policy need that new tort duties have been created.

■ In this case plaintiffs have suggested no reason justifying the imposition of a tort duty upon Tri–State to recommend a suitable roofing system for plaintiffs' stores. The transactions here involved were strictly commercial ones in which the parties were free to define contractually their respective rights and liabilities. There was no disparity in the strength of the parties' bargaining positions. Similarly, although Tri–State was, by the very nature of its calling, more knowledgeable about roofing systems than plaintiffs, plaintiffs were as equally sophisticated as Tri–State in the general affairs and ways of business. Nor is there present here any consideration of public safety. Although an expert retained by plaintiffs opines that there is a possibility that the roofs may fall and thereby cause physical harm, this is not a case brought by an innocent third person injured by such an occurrence. Rather, it involves contracting parties who were in a position to allocate risks among one another in the first instance and who are equally capable of remedying the allegedly dangerous condition, equally capable of purchasing liability insurance and equally amenable to suit by third parties in the event the roofs should fall.

■ While plaintiffs' negligence claim thus fails, their claim for breach of implied warranty of fitness remains viable. Although there apparently is no Maryland case directly on point, there is ample authority from other jurisdictions holding that, where a contractor not only performs the work on a project but provides the plans as well, he has assumed the role of a design professional and the responsibilities which that role entails. *See, e.g., Lewis v. Anchorage Asphalt Paving Co.*, 535 P.2d 1188 (Alaska 1975); *Rosell v. Silver Crest Enterprises*, 7 Ariz.App. 137, 436 P.2d 915 (1968); *Robertson Lumber Co. v. Stephen Farmers Cooperative Elevator Co.*, 274 Minn. 17, 143 N.W.2d 622 (1966). Self-evidently, these responsibilities include the furnishing of an end product which is fit for the purpose for which it is intended.[2]

Tri–State does not contend to the contrary. Instead, it argues that a disclaimer clause contained in the express warranty which it and Carpenter issued in connection with the Glen Burnie and Liberty Road stores bars any claim for a breach of an implied warranty of fitness for a particular purpose.[3]

The warranty provides in pertinent part as follows:

---

**2.** It should be noted that roofs (because of their immovable nature) apparently are not "goods" within the meaning of the Uniform Commercial Code. *See* Md.Com.Law Code Ann. Section 2–102 (1975); *cf. Chlan v. KDI Sylvan Pools, Inc.*, 53 Md.App. 236, 240, 452 A.2d 1259, 1261 (1982). Nevertheless, it is appropriate to use the warranty provisions of the Code and cases interpreting them by analogy in cases such as this. *Cf. St. Johnsbury & Lamoille County Railroad v. Canadian Pacific Railway Co.*, 341 F.Supp. 1368, 1375 (D.Vt.), *aff'd*, 469 F.2d 1395 (2d Cir.1972); *Sheehan v. Anthony Pools, A Division of Anthony Industries, Inc.*, 295 Md. 285, 455 A.2d 434 (1983); 1 R. Anderson, *Anderson on the Uniform Commercial Code* Section 2–102:4, at 501 (3d ed. 1981).

**3.** Relying upon the deposition testimony of plaintiffs' president that the contract provisions for all four of the stores were essentially the same, Tri–State argues that the disclaimer in its form express warranty applies as to the Towson and Golden Ring stores as well. In light of defendants' refusal to issue express warranties for the work done at those two stores, despite plaintiffs' repeated requests that they do so, this argument can most charitably be described as bold.

This Warranty includes the repair of leaks in the Carpenter Foam and Coating Insulative Roofing System caused by any deterioration of the Foam and Coating Membrane and of any leaks caused by faulty workmanship or material used in the application of the Carpenter System....

5. Owner's exclusive remedy for claims arising under this warranty shall be repair or replacement, at Carpenter's option, during the warranty period. This remedy is the sole and exclusive remedy for the obligations of Carpenter and the Applicator Contractor arising from the installation. In no case will Carpenter or the Applicator Contractor be liable for incidental or consequential loss or damage including without limitation damage to other property, delay in work, loss of goodwill, loss of profits, or other economic loss, whether such incidental or consequential loss of damage is claimed on account of breach of contract, negligence, strict liability in tort or any other legal theory....

THIS WARRANTY IS NULL AND VOID SHOULD ANY PERSONS NOT SPECIFICALLY AUTHORIZED BY CARPENTER PERFORM ANY REPAIRS TO THE INSTALLATION. CARPENTER AND THE APPLICATOR CONTRACTOR MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, WHETHER AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER MATTER EXCEPT AS SPECIFICALLY SET FORTH ON THE FACE HEREOF WITH RESPECT TO THE GOODS IT SELLS AND/OR INSTALLS.

The first clause of this warranty, considered in conjunction with the implied warranty disclaimer at the end, can be read as limiting any warranty given by Tri–State and Carpenter to the deterioration of the foam and coating membrane and for faulty workmanship or material. However, considered as a whole, an equally fair reading of the warranty is that, in return for exculpation from incidental and consequential damages (provided by paragraph 5), Tri–State and Carpenter warranted that they would repair and replace the roofing if it failed.[4] Moreover, although, when parsed, the repair and replacement remedy seems to relate only to problems caused by product deterioration or faulty workmanship or material, not to problems arising from unsuitability of the roofing system as a whole, the warranty's silence in the latter regard argues in favor of plaintiffs. What it suggests is that the warranty was not intended even to address roofing failures caused by improper system selection but only failures resulting from improper installation. If that is so, the implied warranty disclaimer in the last clause likewise did not cover an implied warranty of the fitness of the end product but only the ingredient products used during the installation process.[5] Resolution of these ambiguities in favor of Tri–State is entirely inappropriate on the summary judgment record, particularly in light of the fact that Carpenter and Tri–State were the source of the warranty.

4. Plaintiffs do not contend that defendants' failure to repair and replace the roofs voids the consequential damage exculpation clause. *See generally S.M. Wilson & Co. v. Smith International, Inc.,* 587 F.2d 1363, 1374–75 (9th Cir. 1978); *Flow Industries, Inc. v. Fields Construction Co.,* 683 F.Supp. at 531; *Computerized Radiological Services, Inc. v. Syntex Corp.,* 595 F.Supp. 1495, 1510 (E.D.N.Y.1984), *aff'd in part, rev'd and remanded in part on other grounds,* 786 F.2d 72 (2d Cir.1986). *But see Massey–Ferguson, Inc. v. Laird,* 432 So.2d 1259, 1264 (Ala. 1983). Tri–State argues that this clause bars plaintiffs from recovering the monetary damages which they seek. However, the cost of replacing the allegedly defective roofs which plaintiffs seek to recover constitutes the direct damage, not incidental or consequential damages, caused by the wrongs alleged. *Cf. Correlli Roofing Co. v. National Instrument Co.,* 240 Md. 627, 632–33, 214 A.2d 919, 921 (1965).

5. Technical support for this interpretation of the warranty is provided by the closing language of the warranty disclaimer clause referring "to the goods [Carpenter and Tri–State] sells and/or installs." As indicated above, *see supra* note 2, the roofs themselves apparently are not "goods" within the meaning of the Uniform Commercial Code.

*Claims For Breach of Express Warranty*

■ Carpenter contends that it is entitled to summary judgment on the express warranty claims asserted against it on the ground that the express warranty provides as an exclusive remedy the repair and replacement of any defective roofing by an installer selected by Carpenter. This contention may be easily dismissed. When viewed in the light most favorable to plaintiffs, the record establishes that Tri–State and Carpenter have not remedied the roofing problems after having been given an opportunity to do so. On these facts Maryland law is clear that plaintiffs are entitled to obtain, as an alternative remedy, monetary damages in the amount that it would cost them to have another contractor perform any necessary curative work. *See Correlli Roofing Co. v. National Instrument Co.*, 240 Md. 627, 632–33, 214 A.2d 919, 921 (1965); *see also Board of Directors v. Southwestern Petroleum Corp.*, No. 128, slip op. at 20–21 (Tenn.Ct.App. Jan. 14, 1988) [available on WESTLAW, 1988 WL 1760] (LEXIS, States library, Omni file).

*Negligent Misrepresentation Claims*

■ Plaintiffs' claims for negligent misrepresentation are based entirely upon statements in a promotional brochure published by Carpenter and furnished by Tri–State to plaintiffs. These statements generally refer to the quality of the product manufactured by Carpenter and to the experience and reliability of its national network of installers. Defendants assert that the summary judgment record establishes that all of the statements contained in the brochure are true. This Court need not decide that question because it finds that plaintiffs' claims are insufficient on other grounds.

The Maryland Court of Appeals has indicated that a negligent misrepresentation action may be maintained only where the misrepresentation has created the risk of personal injury or where there is an "intimate nexus" between the parties. *See Jacques v. First National Bank*, 307 Md. at 534–35, 515 A.2d at 759–60. Here, plaintiffs argue that the proffered testimony of their expert establishes that there is a possibility that the roof will fall, and that this case therefore falls within the first prong of the *Jacques* test.[6] Their principal support for this argument is provided by dictum in *Council of Co–Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.*, 308 Md. at 41, 517 A.2d at 348 (quoted in *Weisman v. Connors*, 312 Md. at 445, 540 A.2d at 791), which suggests that an action for negligent misrepresentation may be brought in the construction context. However, that case was brought by a condominium association not in privity with the defendants, and it did not address the question of the proper demarcation between tort and contract claims, particularly in a non-consumer context. Moreover, the Court's focus primarily was upon plaintiff's negligent design and construction claims, and it only touched upon the misrepresentation claim tangentially.

Analysis of the claim asserted here demonstrates that, even if it were otherwise viable, it fails on the issue of causation. It can be said, of course, that there is a cause-in-fact relationship between the alleged misrepresentations and the ultimate risk of personal injury since if the misrepresentations had not been made, plaintiff would not have entered into any contracts with Tri–State. However, the gravamen of the wrong leading to the alleged actual risk of personal injury—and the proximate cause of that risk—was not the alleged misrepresentations but Tri–State's alleged

6. Defendants challenge the sufficiency of plaintiffs' evidence of an alleged actual risk of personal injury. If it were not granting defendants' motion on other grounds, this Court would reserve ruling upon that issue until trial. However, it is to be noted that the Maryland Court of Appeals has indicated that evidence of "conditions that present a risk to general health, wel-

fare, or comfort but fall short of presenting a clear danger of death or personal injury will not suffice" to give rise even to a claim for negligent design and construction. *Council of Co–Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.*, 308 Md. at 35 n. 5, 517 A.2d at 345 n. 5.

selection of improper roofing systems. In that connection, it is instructive to compare this case with *Virginia Dare Stores, Inc. v. Schuman*, 175 Md. 287, 1 A.2d 897 (1938), with which it stands in stark contrast. There, defendant's negligent misrepresentation that a dress display case was sturdy enough to support plaintiff's weight directly resulted in the injuries suffered by plaintiff when the display case collapsed.

Plaintiffs likewise cannot meet the alternative, "intimate nexus" test established by *Jacques*. Although the Court of Appeals has broadly stated that such a nexus is provided by "privity or its equivalent," this Court has previously stated its reservations as to whether the Court has meant to suggest that every contract establishes an intimate nexus. *See Flow Industries, Inc. v. Fields Construction Co.*, 683 F.Supp. at 530. To so hold would be to impose a tort duty in every contract case. In any event, in this case, at the time that the brochure containing the alleged misrepresentations was furnished to plaintiffs, there was not yet any contractual relationship between the parties. They were still involved in pre-contract negotiations. While such negotiations may be sufficient to establish an intimate nexus if they invoke considerations of personal trust and reliance, *see Weisman v. Connors*, 312 Md. at 446–48, 540 A.2d at 792–93, the arms length negotiations between representatives of business entities concerning a construction project cannot be said to be "intimate" unless language is to be stripped of all meaning. A party to such negotiations may properly assume that his counterpart is dealing in commercial good faith, i.e. honestly in fact, *cf.* Md.Com.Law Code Ann., Sections 1–201(19) 1–203 (1975), but he is entitled to expect no more.

There is another independent ground upon which plaintiffs' negligent misrepresentation claims fail. Justifiable reliance is one of the elements of plaintiffs' burden of proof. As a matter of law, it hardly seems justifiable for a businessman to enter into a contract in alleged reliance upon statements made in a promotional brochure in disregard of any limitations contained in the contract documents themselves.[7] This is all the more true where, as here, the promotional brochure itself explicitly contained a warranty disclaimer.

A separate order effecting the rulings made in this opinion is being entered herewith.

## ORDER

For the reasons stated in the opinion entered herein, it is this 2nd day of September 1988

ORDERED

1. Carpenter Insulation and Coatings Co.'s motion for summary judgment is granted as to plaintiffs' negligent misrepresentation claims;

2. Carpenter's motion for summary judgment is denied as to plaintiffs' express warranty claims;

3. Tri–State Roofing Co.'s motion for summary judgment is granted as to plaintiffs' negligence and negligent misrepresentation claims; and

4. Tri–State's motion for summary judgment is denied as to plaintiffs' claims for breach of implied warranty of fitness.

---

**7.** No Maryland case holds to the contrary. *Martens Chevrolet, Inc. v. Seney*, 292 Md. at 338 n. 7, 439 A.2d at 539 n. 7, involved a general integration clause, not a forthright warranty disclaimer, which the defendant attempted to assert as a defense to a specific misrepresentation which he made concerning the profitability of his business. Although the Court of Appeals has reserved decision on the question of whether a tort action for negligent misrepresentation may be maintained based upon an alleged misrepresentation contradicted by an express contractual term, *see Creamer v. Helferstay*, 294 Md. 107, 119 n. 13, 448 A.2d 332, 338 n. 13, (1982), it is extremely unlikely that the Court would so rule. To permit such actions would be to open all contracts to litigation and instill uncertainty in every commercial transaction.