974 F.2d 1330
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ARCHITECHURAL SYSTEMS, INCORPORATED, a Maryland corporation,
Plaintiff-Appellant
v.
GILBANE BUILDING COMPANY, a Rhode Island corporation,
Defendant-Appellee.
 No. 92-1107.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 3, 1992
Decided: September 8, 1992
 
 Peter Wilson Taliaferro, THOMAS & LIBOWITZ, Baltimore, Maryland, for Appellant.
 John Francis Morkan, III, OBER, KALER, GRIMES & SHRIVER, Baltimore, Maryland for Appellee.
 Michael S. Libowitz, THOMAS & LIBOWITZ, Baltimore, Maryland, for Appellant.
 John Anthony Wolfe, OBER, KALER, GRIMES & SHRIVER, Baltimore, Maryland, for Appellee.
 Before WIDENER and HAMILTON, Circuit Judges, and STAMP, United States District Judge for the Northern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Architectural Systems, Inc. ("ASI") contracted with Gilbane Building Company ("Gilbane") on March 25, 1987, to perform drywall and acoustical tile work on a Baltimore development project for which Gilbane served as the general contractor. During the course of construction, Carley Capital Group ("Carley"), the project owner, experienced financial difficulties, which resulted in delays in payments to Gilbane and its subcontractors, including ASI. In late 1988, Carley became insolvent and ceased payments to Gilbane. Gilbane then halted payments to ASI, relying on a condition precedent in its contract with ASI. Following Gilbane's failure in its efforts to recover the monies owed by Carley, ASI filed suit against Gilbane in the United States District Court for the District of Maryland on September 12, 1990, alleging breach of contract, negligence, negligent misrepresentation, and intentional misrepresentation. The district court granted Gilbane's motion for partial summary judgment as to ASI's breach of contract claim on March 21, 1991, which ruling ASI has not challenged in this appeal. Following discovery, the district court entered summary judgment in favor of Gilbane on ASI's negligence, negligent misrepresentation, and intentional misrepresentation allegations on December 16, 1991. Architectural Sys., Inc. v. Gilbane Bldg. Co., 779 F. Supp. 820 (D. Md. 1991). ASI timely noted this appeal from the district court's December 16, 1991, memorandum opinion. Following a de novo review of the materials before the court, see Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127 (4th Cir. 1987), viewing all inferences from the underlying facts in the light most favorable to ASI, Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), we affirm.
 
 I.
 
 2
 In early 1985, Gilbane entered into a cost-reimbursable general contract with Carley to serve as the construction manager and general contractor for the Henderson's Wharf project located in Baltimore City, Maryland. On March 25, 1987, ASI contracted with Gilbane to perform drywall and acoustical work on the project for a total cost of $2,624,000. ASI's payments were subject to a ten percent retainage from the amounts of its monthly requisitions to Gilbane. The trade contract into which Gilbane and ASI entered provided that Gilbane's receipt of payments from Carley was a condition precedent to Gilbane's obligation to pay ASI. ASI commenced work on the project in April 1987.
 
 
 3
 On September 4, 1987, several months after entering into the trade contract with ASI, Gilbane entered into a lump-sum general contract with Carley that replaced the cost-reimbursable contract. Under the lump-sum contract, valued at $19,188,414, Gilbane was not required to incur any cost prior to being paid by Carley but rather was to be paid in installments consistent with the percentage completion of the project. Gilbane and ASI executed an amendment to the trade contract on November 18, 1987, incorporating the September 4, 1987, agreement between Carley and Gilbane as a contract document to which the trade agreement applied. The contract between ASI and Gilbane remained a retainage contract.
 
 
 4
 Under the conduit clause of the trade contract, ASI was entitled to the benefit of all rights against Gilbane that Gilbane had against Carley. Gilbane had the right to obtain financial assurances of Carley's ability to fund the project at the time of the execution of the general contracts, and under the conduit clause, ASI was entitled to request assurances from Gilbane at the time of the execution of the trade contract. Prior to entering the lump-sum general contract, Gilbane sought financial assurances from Carley as to its ability to complete the project. Carley provided Gilbane with a letter from its lender on October 14, 1987, stating that the lender's "total commitment is now in excess of Twenty-Nine Million, One Hundred Fifty Thousand Dollars ($29,150,000)"; that "[f]unds will be available based upon approved requisitions to pay contractors and agents in a timely manner"; and that "the additional funds will assure the entire program's completion". Following receipt of the letter, Gilbane executed the lump-sum contract and proceeded with its work.
 
 
 5
 By the autumn of 1987, ASI had experienced slow payment of several of its monthly requisitions. ASI's president contacted Gilbane's project engineer, asking whether Carley's money problems might prevent ASI from being paid. The project engineer responded that the job was going to finish, that it was not in trouble, and that there was no chance of ASI not being paid. In October 1987, Gilbane's project manager concluded that Carley's financial arrangements were not sufficient to cover the full range of costs on the Henderson's Wharf project, which costs included expenses outside the Gilbane contract. The project manager's conclusions were not communicated to ASI. In February 1988, ASI was again concerned with Carley's ability to finance the project, and ASI's owner asked Gilbane's project executive about Carley's financial condition. Gilbane's project executive informed ASI's president that, in Gilbane's opinion, Carley would be able to complete the project as anticipated.
 
 
 6
 Completion of the Henderson's Wharf project was scheduled for early June 1988, but as work progressed through the spring of 1988, several of Carley's payments were late. As Gilbane received the payments due it from Carley, Gilbane paid its subcontractors, including ASI. When Carley's payment of Gilbane's May 1988 requisition was delayed beyond the mid-June payment date, Gilbane contacted Carley to inquire of the status of the payment and contacted Carley's lender in an attempt to ascertain whether a problem existed. Still not having received the required payment, Gilbane exercised its rights under the lump-sum contract and notified Carley that it would suspend its work as well as that of its subcontractors unless payment was forthcoming. Gilbane also advised its subcontractors of its action. After approximately one month of consultation and activity, Carley obtained additional financing from its lender and paid Gilbane's May 1988 requisition.
 
 
 7
 Work on the Henderson's Wharf project had nearly been completed by the time Carley paid Gilbane's May 1988 requisition with only final work known as "punch list" work remaining. Shortly after August 1988, Carley encountered severe financial difficulties on several of its other projects around the United States. Concerned that final payment might be in jeopardy, Gilbane filed a mechanic's lien on the project, including in its claim monies owed the subcontractors. A senior lienholder foreclosed on the project, extinguishing Gilbane's lien by operation of law. Gilbane subsequently filed suit and obtained judgments against Carley and its principals and filed claims in the bankruptcy proceeding of Carley and its principals. Gilbane's filings included claims for monies owed the subcontractors, including ASI. Gilbane was unsuccessful in obtaining full recovery of the claims.
 
 
 8
 ASI subsequently filed the present action in the United States District Court for the District of Maryland, seeking payment of monies it was allegedly owed under its contract with Gilbane and asserting claims for breach of contract, negligence, negligent misrepresentation, and intentional misrepresentation. The district court approved a procedure under which the court would first rule on the contract and condition precedent clause before proceeding to the causes of action sounding in tort.
 
 
 9
 A second subcontractor on the Henderson's Wharf project, Brisk Waterproofing Company, filed suit in the Circuit Court of Maryland for Prince George's County, alleging the condition precedent payment provision in its trade contract, which was identical to the condition precedent payment provision in the Gilbane-ASI contract, was invalid. The Maryland Court of Special Appeals, reversing the trial court's decision, held that payment provisions contained in the trade contracts were valid under Maryland law and that Gilbane was not contractually obligated to pay its subcontractors unless it had first received payment from Carley. Gilbane Building Co. v. Brisk Waterproofing Co., 86 Md. App. 21, 28-29, 585 A.2d 248, 251-52 (1991).
 
 
 10
 Relying on Brisk, the district court concluded that Carley's payment of Gilbane was a condition precedent to the requirement that Gilbane pay ASI under the trade agreement and granted Gilbane's motion for partial summary judgment on the breach of contract claim that ASI had asserted. Architectural Sys., Inc. v. Gilbane Bldg. Co., 760 F. Supp. 79, 81 (D. Md. 1991). ASI then reasserted its tort claims against Gilbane, in response to which Gilbane filed a motion to dismiss. The district court denied Gilbane's motion and ordered discovery.
 
 
 11
 Following discovery, Gilbane moved for summary judgment on the three remaining counts of ASI's complaint. The district court granted Gilbane's motion for summary judgment as to each count. The district court found that ASI's negligence and negligent misrepresentation claims failed because "[m]ere negligent breach of a contract is not enough to sustain an action sounding in tort," Architectural Sys., 779 F. Supp. at 821 ( citing Heckrotte v. Riddle, 224 Md. 591, 168 A.2d 879 (1961)), and because ASI had failed to establish that a duty of good faith and fair dealing existed between Gilbane and ASI under which Gilbane would have been required to disclose all of its knowledge relating to Carley's financial condition. As to ASI's allegation of fraudulent misrepresentation, the district court concluded that ASI had failed to prove that the misrepresentation by Gilbane, if any, had been made with the intent to defraud ASI, as required under Maryland law. Id. at 823.
 
 II.
 
 12
 The viability of ASI's negligence and negligent misrepresentation claims depends upon the proof of the existence of a duty of disclosure owed by Gilbane to ASI. A claim for negligence arises under Maryland law when one party breaches a duty of care it owes another party and injury to the second party proximately results. Read Drug & Chemical Co. v. Colwill Constr. Co., 250 Md. 406, 412, 243 A.2d 548, 553 (1968). Maryland recognizes the tort of negligent misrepresentation when one party, who owes a duty of care to another party, negligently makes a false statement upon which the first party intends the second party to act, knowing that the second party probably will rely upon the statement, the second party does reasonably rely upon the statement, and the second party suffers injury as a proximate result of its reliance upon the false statement. Martens Chevrolet, Inc. v. Seney, 292 Md. 328, 337, 439 A.2d 534, 539 (1982).
 
 
 13
 Under Maryland law, the "mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." Heckrotte, 224 Md. at 595, 168 A.2d at 882. In an ordinary arms' length relationship between parties to a contract, there are no confidences imposed and no duty to disclose information. See, e.g., Fegas v. Sherrill, 218 Md. 472, 478, 147 A.2d 223, 226 (1958). Maryland has recognized an exception to this general rule and imposed a duty to disclose when a relationship of trust and confidence exists between the parties. Jones v. J.H. Hiser Constr. Co., 60 Md. App. 671, 677, 484 A.2d 302, 304-05 (1984), cert. denied, 303 Md. 114, 492 A.2d 616 (1985). Under the facts of this case, viewed in the light most favorable to ASI, the court must conclude that ASI has not demonstrated that a special relationship of trust existed between it and Gilbane such as to make the exception applicable, and therefore ASI may not recover on its negligence or negligent misrepresentation claims.
 
 
 14
 The contract between Gilbane and ASI was an ordinary construction subcontract. In United States ex rel. Allied Bldg. Prods. Corp. v. Federal Ins. Co., 729 F. Supp. 477 (D. Md. 1990), the court concluded that Maryland courts considering the question would not find that general contractors and subcontractors stand in a confidential relationship with one another such as to create a duty to disclose by the general contractor. Id. at 478; see also 21st Century Properties, Co. v. Carpenter Insulation & Coatings Co., 694 F. Supp. 148, 151 (D. Md. 1988) ("In this case plaintiffs have suggested no reason justifying the imposition of a tort duty upon [the defendant] to recommend [the taking of certain action by plaintiffs]. The transactions here involved were strictly commercial ones in which the parties were free to define contractually their respective rights and liabilities."). Further, a Maryland federal district court has concluded that the Maryland Court of Appeals would not recognize the tort of negligent misrepresentation when "the controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businessmen...." Flow Indus., Inc. v. Fields Constr. Co., 683 F. Supp. 527, 530 (D. Md. 1988); see also Boatel Indus., Inc. v. Hester, 77 Md. App. 284, 307, 550 A.2d 389, 401 (1988) (agreeing with the conclusion reached in Flow Indus.); Martin Marietta Corp. v. International Telecommunications Satellite Org., 763 F. Supp. 1327, 1333 (D. Md. 1991) (No duty of due care sounding in tort is created when the parties are businessmen and the relationship between them is strictly contractual).
 
 
 15
 Gilbane was the general contractor of the Henderson's Wharf project and ASI was one of its subcontractors. Gilbane and ASI entered into a standard construction subcontract after arms' length negotiations. The losses allegedly suffered by ASI resulted from statements allegedly made during the course of ASI and Gilbane's subcontract relationship. The facts and issues presented by the present case closely resemble the facts and issues addressed by the federal district court in Allied Bldg. Prods. and Flow Indus.
 
 
 16
 Relying upon Impala Platinum, Ltd. v. Impala Sales, Inc., 283 Md. 296, 389 A.2d 887 (1978), ASI argues that because Gilbane is a large construction firm with vast resources while ASI is a small contractor with limited resources, the parties were not equals at the bargaining table. ASI argues that it was dependent upon Gilbane and therefore a duty of disclosure should be imposed upon Gilbane. ASI also relies upon the decision in Jacques v. First Nat'l Bank, 307 Md. 527, 53435, 515 A.2d 756, 759-60 (1986), in which the Maryland Court of Appeals stated that contractual privity may satisfy the nexus between failure to exercise due care and risk of economic loss that is a condition precedent to imposition of tort liability. The facts in this case distinguish it from Impala Platinum and Jacques, however, defeating ASI's reliance upon these cases.
 
 
 17
 The parties in Impala Platinum were related companies with Impala Platinum owning a 45 percent interest in CMI, the owner of Impala Sales, Inc., and having two officers on CMI's board of directors. Further, the contract at issue in Impala Platinum was a one year exclusive supply contract that was automatically renewed absent cancellation by one of the parties. In Jacques, the plaintiffs were residential purchasers of a home who applied for a mortgage loan from the defendant. The bank had agreed to process the Jacques' loan application, but the Jacques alleged the bank had failed to exercise reasonable care in processing and reviewing the application. The Maryland Court of Appeals concluded that because of the nature of the banking industry and its relation to the public welfare and because the Jacques were "particularly vulnerable and dependent upon the Bank's exercise of due care," Jacques, 307 Md. at 540, 515 A.2d at 762, a duty of reasonable care did exist under the facts of that case. In this case, however, Gilbane is a general contractor; ASI is a subcontractor performing acoustical tiling and drywall work; and the contract at issue is a standard subcontract covering one job. Impala Platinum and Jacques do not apply to the facts of the present case. ASI was not dependent upon Gilbane in the same sense that CMI was dependent upon Impala Platinum or the Jacques were dependent upon First National Bank of Maryland. The construction industry is not similar to the banking industry in its relation to the public welfare. No extracontractual duty of disclosure arises.
 
 
 18
 As the Carpenter Insulation court recognized, although one party may be more knowledgeable than the other about certain types of work, no duty of disclosure will be imposed when the parties are "equally sophisticated ... in the general affairs and ways of business." Carpenter Insulation, 694 F. Supp. at 151. The value of ASI's contract on the Henderson's Wharf project exceeded $2,624,000, indicative of the size of ASI's business, its ability to bid for and complete major construction jobs, and its accompanying sophistication in business affairs. Further, ASI was clearly aware of the financial difficulties that Carley was experiencing, as evidenced by the delays in payment and the inquiries ASI directed to Gilbane regarding Carley's financial health. While ASI may not have been as knowledgeable about general contracting work as was Gilbane, the parties were equally sophisticated in general business affairs and Gilbane owed no extra-contractual duty of disclosure to ASI.
 
 
 19
 The relationship between ASI and Gilbane was an ordinary relationship between general contractor and subcontractor, with no relationship of trust and confidence existing between the parties. Gilbane and ASI were both sophisticated businesses engaging in arms' length contractual negotiations; no special relationship of dependency takes this case out of the general rule. ASI's negligence claim and negligent misrepresentation claim fail under Maryland law and the district court correctly entered summary judgment on these claims in Gilbane's favor.
 
 III.
 
 20
 To prove intentional misrepresentation under Maryland law, a party must prove damages directly resulting from a false representation by a second party, made with knowledge or reckless indifference for the truth, with intent to defraud, upon which the first party reasonably relies. Appel v. Hupfield, 198 Md. 374, 378, 84 A.2d 94, 95-96 (1951). " 'When fraud ... is imputed, something more than a mere preponderance of evidence must be produced; the proof must be "clear and satisfactory" and be of such character as to appeal strongly to the conscience of the court.' " Owens-Illinois, Inc. v. Zenobia, 325 Md. 420, 601 A.2d 633, 656 (1992) (quoting First Nat'l Bank v. United States Fidelity & Guar. Co., 257 Md. 400, 411, 340 A.2d 275, 283 (1975)); see also R. Gilbert, Maryland Tort Law Handbook § 17.4, at 175 (1986) ("Recovery for intentional misrepresentation requires proof that the defendant's misrepresentation was motivated by scienter, or fraudulent intent"). Scienter constitutes a "mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193-94 n.12 (1976). To prove fraudulent misrepresentation, ASI must also prove that it "not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its proof." Gitting v. Von Dorn, 136 Md. 10, 16, 109 A. 553, 554 (1920). Viewing all facts in the light most favorable to it, the court concludes that ASI has failed to meet its burden in opposing Gilbane's motion for summary judgment on ASI's fraudulent misrepresentation claim. ASI has failed to prove scienter by clear and satisfactory proof and has failed to show that it could reasonably rely upon Gilbane's representations. The district court properly entered summary judgment on this claim in Gilbane's favor.
 
 
 21
 ASI is required to make a showing of scienter by clear and satisfactory proof to defeat the entry of summary judgment against it. Celotex, 477 U.S. at 323-24; Zenobia, 325 Md. 420, 601 A.2d at 65556. ASI offers four pieces of evidence in opposition to the district court's award of summary judgment in favor of Gilbane on ASI's fraudulent misrepresentation claim: the comment of Gilbane's project engineer that there was no chance of ASI not being paid; Gilbane's failure to communicate to ASI the conclusions of Gilbane's project manager that Carley's financial arrangements for the Henderson's Wharf project were insufficient; the statement of Gilbane's project executive that in Gilbane's opinion, Carley would be able to complete the project as anticipated; and ASI's assertion that it might have sought other relief had it been made aware of Carley's financial difficulties. In connection with each of these arguments, ASI also asserts that the inferences that may be drawn from the mechanics of Gilbane's lump-sum payment agreement with Carley versus the provisions of ASI's retainage contract with Gilbane establish scienter by clear and satisfactory proof and require reversal of the district court's judgment in favor of Gilbane. In response, Gilbane argues that these evidentiary items do not show fraudulent misrepresentation by clear and satisfactory evidence, and require judgment in its favor.
 
 
 22
 The statements of Gilbane's project engineer and project executive are not representations that provide any direct evidence of fraudulent intent on the part of Gilbane. The same is also true of Gilbane's failure to communicate the conclusions reached by its project manager to ASI. While, as ASI notes, the required mental state to establish fraudulent intent may be satisfied by reckless indifference to error, Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 530 (9th Cir. 1986), drawing all inferences that may be made from these facts in ASI's favor, the court must conclude ASI has failed to establish scienter by clear and satisfactory evidence.
 
 
 23
 ASI has offered no direct evidence to suggest that Gilbane believed the Henderson's Wharf project would not be completed when its project engineer made that statement in the autumn of 1987, nor has ASI offered any evidence that Gilbane was not of the opinion that Carley would complete the project when its project executive spoke with ASI's president in 1988. Additionally, ASI has offered no direct evidence in support of its contention that Gilbane failed to inform it of Gilbane's project manager's conclusion in order to induce ASI to continue working on the Henderson's Wharf project. ASI argues, however, that from these facts, considered in connection with the payment provisions of the contracts under which Gilbane was paid for its work based upon the percentage completion of the project while ASI's payments were subject to a ten percent retainage, a juror could reasonably conclude under a clear and satisfactory evidentiary standard that Gilbane made fraudulent misrepresentations in order to receive a greater percentage of its fee. This court does not agree.
 
 
 24
 The statements made by Gilbane constituted, at most, negligence, for which, as previously found, no recovery may be had under Maryland law. The comments were opinions based upon the facts before Gilbane employees at two distinct points in time suggesting what they thought would happen in the future. Gilbane's project manager's conclusions, which were not communicated to ASI, also constitute opinions of what future events would be based upon matters before him at one particular time. One cannot reasonably conclude that the two statements by Gilbane employees and the decision not to disseminate the conclusion of Gilbane's project manager were made with the intent to defraud ASI simply because Gilbane received its fee based upon the percentage completion of the Henderson's Wharf project. ASI has failed to prove that either of the statements made by the two Gilbane employees were false when made, and has also failed to show that Gilbane's decision not to distribute the opinion of its project manager represented a deliberate attempt by Gilbane to mislead ASI. The inference ASI asks this court to draw from these facts is not reasonable and has not been established by clear and satisfactory evidence. See University Nursing Home, Inc. v. R. V. Brown & Assocs., Inc., 67 Md. App. 48, 62, 506 A.2d 268, 274, cert. denied, 306 Md. 514, 510 A.2d 260 (1986).
 
 
 25
 ASI also argues that a reasonable juror could infer fraud based upon the relief that ASI might have sought had it been made aware of Carley's financial difficulties, coupled with Gilbane's desire to earn a greater percentage of its fee by keeping ASI on the job as long as possible. Gilbane argues that the conduit and reference clauses of its contract with ASI prevented ASI from stopping work unless certain conditions precedent occurred, which conditions did not occur in this case. ASI argues, however, that the conduit clause was selective, and would not have prevented ASI from stopping work when it was not paid. Viewing the facts in ASI's favor, and assuming the conduit clause did not limit ASI's ability to suspend or terminate work, the inference ASI seeks to draw is unconvincing, and certainly does not rise to the level of clear and satisfactory evidence establishing fraud. As Gilbane notes, it was required under its contract with Carley to seek to attain completion of the project as long as it continued to be paid. Gilbane was being paid by Carley, and therefore was obligated to continue its work on the project as well as the work of its subcontractors. No reasonable juror could infer fraudulent misrepresentation from Gilbane's actions in this regard, and summary judgment was properly entered on Gilbane's behalf.
 
 
 26
 In order to defeat the entry of summary judgment against it, ASI must also prove by clear and satisfactory evidence that it could and did reasonably rely upon the statements by Gilbane. ASI argues that it was particularly vulnerable and dependent upon Gilbane, and therefore its reliance upon the statements was reasonable under Maryland law. See Giant Food, Inc. v. Ice King, Inc., 74 Md. App. 183, 536 A.2d 1182, cert. denied, 313 Md. 7, 542 A.2d 844 (1988). This court has previously rejected ASI's argument that it was particularly vulnerable: it was a drywall and acoustical tile subcontractor performing a $2,624,000 contract. Further, ASI's contention that Gilbane could obtain information directly from Carley is not supported by the facts of this case. Gilbane had no more right than ASI to seek financial assurances from Carley once Gilbane had signed the lump-sum contract and therefore was in no position to procure any information directly from Carley regarding Carley's financial stability. The statements made by Gilbane's employees regarding the financial health of Carley and its ability to complete the Henderson's Wharf project can be construed only as statements of opinion of future events upon which no one could reasonably rely. See Appel, 198 Md. at 374, 84 A.2d at 96. Summary judgment in favor of Gilbane was also appropriate on ASI's fraudulent misrepresentation claim based upon the fact that ASI could not reasonably rely upon the representations made by Gilbane.
 
 IV.
 
 27
 For the reasons stated herein, judgment in favor of Gilbane on ASI's negligence, negligent misrepresentation, and fraudulent misrepresentation counts is affirmed.
 
 AFFIRMED